**Paul D. HALVERSON, et al., Appellants,**

**v.**

**Rodney E. SLATER, Secretary, United States Department of Transportation, Appellee.**

**No. 96–5151.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1997.

Decided Nov. 12, 1997.

John Longstreth, Washington, DC, argued the cause, for appellants. Donald A. Kaplan was on brief.

Cynthia A. Schnedar, Assistant United States Attorney, argued the cause for the appellee. Eric H. Holder, Jr., United States Attorney, Washington, DC, at the time the brief was filed, and R. Craig Lawrence and Michael J. Ryan, Assistant United States Attorneys, were on brief.

Before: WALD, SENTELLE and HENDERSON, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

This appeal turns on the authority of the Secretary of the Department of Transportation (Secretary) to delegate certain responsibilities under the Great Lakes Pilotage Act of 1960, 46 U.S.C.A. §§ 9301 *et seq.* (West Supp.1997) (GLPA), to the Saint Lawrence Seaway Development Corporation (Corporation). The appellants, two Great Lakes ship pilots and two Great Lakes shipping pilots' associations, challenge the Secretary's delegation of GLPA responsibilities to the Corporation on the grounds that the delegation (1) exceeds the Secretary's authority under 46 U.S.C.A. § 2104(a) (West Supp.1997), (2) lodges with the Corporation duties it has no authority to discharge and (3) violates the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (APA). The appellee, the Secretary, responds that delegation to the Corporation is proper: (1) an alternative source of delegation power, 49 U.S.C. § 322(b), supports the delegation; (2) the Corporation has authority to accept and discharge the "essentially economic" responsibilities it has been delegated because they relate to its broader mission of regulating commerce on the Saint Lawrence Seaway; and (3) the delegation does not contravene applicable APA requirements. The district court agreed with the Secretary in all respects and granted his motion for summary judgment. *Halverson v. Peña,* No. 96–CV–0028, 1996 WL 217885, at *11 (D.D.C. Apr. 23, 1996).

We now reverse. Pursuant to the first step of the familiar *Chevron* analysis, we conclude that the plain meaning of section 2104(a) limits delegation of GLPA functions to the United States Coast Guard and that section 322(b) cannot fairly be construed to expand the limitation. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d

694 (1984). We do not reach the other grounds asserted for reversal except to the extent they may bear on the question of the Secretary's authority, whether under section 322(b) or section 2104(a), to delegate GLPA responsibilities to the Corporation.

## I. BACKGROUND

The Corporation was established in 1954 by an Act of the Congress, Pub.L. No. 83–558, 68 Stat. 93 (codified as amended at 33 U.S.C. §§ 981 *et seq.*). Its congressional charter set forth the Corporation's specific (and limited) functions in some detail. *See* 33 U.S.C. § 983;[1] S.Rep. No. 83–441, at 2, 6–14 (1953) (describing limited purposes for which Corporation was created); H.R.Rep. No. 83–1215 (1954) (similar), *reprinted in* 1954 U.S.C.C.A.N. 2197, 2224–42. The narrowness of the Corporation's mission was further reflected in the statutory enumeration of the Corporation's powers. *See* 33 U.S.C. § 984(a).[2] When first established, the Corporation was "subject to the direction and supervision of the President, or the head of such agency as he may designate." 33 U.S.C. § 981 (1954). Through fiscal year 1966, the Department of Commerce was the agency designated to supervise the Corporation. In fiscal year 1967, however, the Congress amended section 981, replacing the "President, or the head of such agency as he

may designate" language with the "Secretary of Transportation." 33 U.S.C. § 981 (1966).

Construction of the Saint Lawrence Seaway was completed in 1959, opening the Great Lakes to international shipping. Not surprisingly, opening of the Seaway brought with it a marked increase in the volume of both domestic and international marine traffic navigating the Great Lakes, their tributaries and their outlets. As a result, one year later the Congress enacted GLPA. *See* Pub.L. No. 86–555, 74 Stat. 259 (1960) (codified as amended at 46 U.S.C.A. §§ 9301 *et seq.* (West Supp.1997)). Among other things, GLPA required commercial ships to employ a registered United States or Canadian pilot to steer them (or advise them how to steer) safely and efficiently through certain portions of the Great Lakes, their tributaries and outlets, and the approaches to the Sault Sainte Marie Locks. *See* 46 U.S.C.A. § 9302 & Note (West Supp.1997).

As noted, in 1967 the Department of Transportation took over supervision of the Corporation. That same fiscal year, administrative responsibility for the United States Coast Guard was transferred from the Department of the Treasury to the Transportation Department.[3] *See* Pub.L. No. 89–670, § 6(b)(1), 80 Stat. 931 (1966) (codified as amended at 14 U.S.C. § 1). The Transportation Secretary subsequently delegated his GLPA responsibilities to the Commandant of

---

**1.** Section 983(a), in relevant part, provides:

The Corporation is authorized and directed to construct, in United States territory, deep-water navigation works substantially in accordance with the "Controlled single stage project, 238–242" ... together with necessary dredging in the Thousand Islands section; and to operate and maintain such works in coordination with the Saint Lawrence Seaway Authority of Canada....

33 U.S.C. § 983(a).

**2.** Section 984(a), in relevant part, provides:

For the purpose of carrying out its functions under this chapter the Corporation—

...

(5) may make and carry out such contracts or agreements as are necessary or advisable in the conduct of its business;

...

(7) may appoint and fix the compensation, in accordance with the provisions of chapter 51 and subchapter III of chapter 53 of Title 5, of such officers, attorneys, and employees as may

be necessary for the conduct of its business, define their authority and duties, and delegate to them such of the powers vested in the Corporation as the Administrator may determine;

...

(9) shall determine the character of and the necessity for its obligations and expenditures, and the manner in which they shall be incurred, allowed and paid, subject to provisions of law specifically applicable to Government corporations;

...

(11) may provide services and facilities necessary in the maintenance and operation of the seaway....

33 U.S.C. § 984(a).

**3.** When the Department of Transportation was established in 1966, Pub.L. No. 89–670, § 2(b)(1), 80 Stat. 931 (1966), the Congress transferred to it various functions and administrative responsibilities of other agencies, including responsibility for the Coast Guard and the Corporation as well as GLPA powers and duties.

the Coast Guard, with whom they remained until December 1995. *See* Delegations to Commandant of the Coast Guard, 49 C.F.R. § 1.46(a) (1994).

In December 1995, the Secretary published a final rule that rescinded the standing delegation of GLPA functions to the Coast Guard and redelegated eleven "essentially economic" functions to the Corporation. *See* Organization and Delegation of Powers and Duties; Transfer of Great Lakes Pilotage Authority From the Coast Guard to the Saint Lawrence Seaway Development Corporation, 60 Fed.Reg. 63,444 (1995) (codified at 49 C.F.R. § 1.52(d)-(e) (1997)).[4] Shortly thereafter, the appellants filed suit and moved for a preliminary injunction or summary judgment. The Secretary cross-moved for summary judgment and a hearing on the motions was held on March 8, 1996. At its conclusion, the district court denied the appellants' motion for a preliminary injunction and reserved decision on the parties' summary judgment motions.

By Memorandum Opinion and Order dated April 23, 1996 the district court granted the Secretary's cross-motion for summary judgment, finding that both the first and second steps of the analysis set forth in *Chevron* compelled a holding in his favor. *Halverson,* 1996 WL 217885, at *4–*6. The lower court first applied *Chevron* step one to section 322(b), whose provisions principally authorize the Secretary to delegate his Title 49 powers and duties to any Transportation officer or employee. The trial court, however, failed to construe section 322(b) in light of section 2104(a)—a specific grant of delegation authority of Title 46 powers and duties (including GLPA powers and duties) to Coast Guard officials only. Nor did the court below otherwise attempt to interpret section 2104(a) according to *Chevron* step one, *id.* at *4–*5, deciding instead to construe it pursuant to

*Chevron* step two. While the district court concluded that its step-one analysis of section 322(b) resolved the delegation issue in the Secretary's favor, it further found that even if section 322(b) was not unambiguous, the Secretary's interpretation of section 2104(a) was reasonable and therefore entitled to deference under *Chevron* step two. *Id.* at *5–*6. Thus, the lower court applied *Chevron* step one to section 322(b) and *Chevron* step two to section 2104(a).

## II. DISCUSSION

■ We review the district court's award of summary judgment *de novo.* *See Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). The parties' arguments regarding the Secretary's authority to delegate GLPA functions to non-Coast Guard officials center on the proper interpretation of (and relationship between) 49 U.S.C. § 322(b) and 46 U.S.C.A. § 2104(a) (West Supp.1997). Section 322(b), in relevant part, provides:

> The [Transportation] Secretary may delegate, and authorize successive delegations of, duties and powers of the Secretary to an officer or employee of the Department.

49 U.S.C. § 322(b). As the Secretary reads this provision, it gives him largely unfettered discretion to delegate duties and powers to agency officers and employees.[5] Indeed, he appears to have succeeded in convincing the district judge that only an *express* statutory prohibition could foreclose exercise of his section 322(b) authority. *See Halverson,* 1996 WL 217885, at *6 ("Had Congress intended the Great Lakes pilotage functions to remain solely with the Coast Guard, it could have *explicitly* provided so.") (emphasis added). The appellants read the Secretary's section 322(b) authority a good deal more narrowly. They contend, in effect, that the

---

4. The eleven functions include:

(1) Investigation and prosecution of violations of [GLPA]; (2) registration, qualification, and training of registered pilots; (3) association working rules and dispatching procedures; (4) pilot working conditions; (5) selection of pilots; (6) number of pilots; (7) availability of pilots; (8) number of pilotage pools; (9) articles of association; (10) auditing; and (11) ratemaking.

60 Fed.Reg. 63,444 (1995).

5. Both parties apparently assume that the Administrator of the Corporation is "an officer or employee of the Department" for the purpose of section 322(b). While we assume the same in deciding this appeal, we express no opinion as to the correctness of the assumption.

scope of section 322(b) cannot be determined without reference to the specific power being delegated, the authority of the delegatee to exercise the power and any limitations that may be imposed by other, more specific statutory provisions such as 46 U.S.C.A. § 2104(a) (West Supp.1997).

Section 2104(a), in turn, provides that:

The Secretary may delegate the duties and powers conferred by this subtitle [Subtitle II entitled "Vessels and Seamen"] to any officer, employee, or member of the Coast Guard, and may provide for the subdelegation of those duties and powers.

46 U.S.C.A. § 2104(a) (West Supp.1997).[6] The appellants read section 2104(a) to authorize the Secretary to exercise GLPA duties and powers himself or to delegate them to a Coast Guard official. They believe that section 2104(a) unambiguously proscribes delegation of GLPA responsibilities outside the Coast Guard and thwarts the Secretary's attempt to effect such a delegation pursuant to his general section 322(b) authority. The Secretary, unsurprisingly, construes section 2104(a) quite differently. He reasons that because section 2104(a) does not *expressly* proscribe a section 322(b) delegation, he may delegate Subtitle II powers and duties pursuant to the latter provision. The Secretary thus construes section 2104(a) merely to clarify that "any officer, employee, or member of the Coast Guard" is an "officer or employee of the Department" to whom he may otherwise delegate Subtitle II responsibilities pursuant to section 322(b).

■ The *Chevron* framework governs our interpretation of sections 322(b) and 2104(a):

Under this analysis, *the court must first exhaust the traditional tools of statutory construction* to determine whether Congress has spoken to the precise question at issue. . . . If the court can determine con-

gressional intent, then that interpretation must be given effect. . . . If, on the other hand, the statute is silent or ambiguous with respect to the specific issue, then the court will defer to a permissible agency construction of the statute.

*Natural Resources Defense Council, Inc. v. Browner,* 57 F.3d 1122, 1125 (D.C.Cir.1995) (internal citations and quotation marks omitted; emphasis added) [hereinafter *NRDC*]. Thus, "[i]f employment of an accepted canon of construction illustrates that Congress had a *specific* intent on the issue in question, then the case can be disposed of under the first prong of *Chevron.*" *Michigan Citizens for an Indep. Press v. Thornburgh,* 868 F.2d 1285, 1292–93 (D.C.Cir.) (emphasis original), *aff'd by equally divided Court,* 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989) [hereinafter *Michigan Citizens*]. If, however, the statute is ambiguous, then *Chevron* step two "implicitly precludes courts picking and choosing among various canons of construction to reject reasonable *agency* interpretations." *Id.* at 1292 (emphasis original).

■ We believe the lower court erred by failing to "exhaust the traditional tools of statutory construction," *NRDC,* 57 F.3d at 1125, with respect to *both* section 322(b) and section 2104(a). *See Horsehead Resource Dev. Co. v. Browner,* 16 F.3d 1246, 1262 (D.C.Cir.1994) (applying *Chevron* step one to two different RCRA provisions and concluding that, when read together, their plain meaning favored EPA's construction as embodied in regulation); *cf. K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, *as well as the language and design of the statute as a whole.*") (emphasis added); *Ethyl Corp. v. EPA,* 51 F.3d 1053, 1063 (D.C.Cir.1995) (applying *Chevron*

---

**6.** Section 2104(a) applies here because GLPA responsibilities are among the Secretary's Title 46, Subtitle II powers and duties. Section 2104(a) is found in Part A ("General Provisions") and GLPA is found in Part F ("Manning of Vessels") of Subtitle II. *See generally* 46 U.S.C.A. (West Supp.1997). Section 2104(b) appears to authorize, in circumstances not applicable here, delegation of Subtitle II powers and duties to a

designated Customs Service officer or employee serving in the stead of a Coast Guard official. *See* 46 U.S.C.A. § 2104(b) (West Supp.1997) ("When this subtitle authorizes an officer or employee of the Customs Service to act in place of a Coast Guard official, the Secretary may designate that officer or employee subject to the approval of the Secretary of the Treasury.").

step one to "find that the language of section 211(f)(4), standing alone, *and standing in contrast to section 211(c)(1),* is dispositive of this case") (emphasis added). After examining both section 2104(a) and section 322(b) according to *Chevron* step one, as we must, we believe that the language of section 2104(a) compels the conclusion that the Congress did not intend to authorize the delegation of GLPA functions to a non-Coast Guard official. Our conclusion is supported by the limited statutory purposes of the Corporation.

## A. The Language of Section 2104(a)

 The Secretary's interpretation of section 2104(a) runs afoul of the cardinal canon of statutory construction that "[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); *cf. Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."). As the Secretary reads section 2104(a), it does not (other than in times of war) provide any delegation authority beyond what he already possesses under section 322(b), and thus, at most, merely confirms his section 322(b) authority. This reading plainly violates the familiar doctrine that the Congress cannot be presumed to do a futile thing. *See Ramah Navajo Sch. Bd., Inc. v. Babbitt,* 87 F.3d 1338, 1344–45 n. 6 (D.C.Cir.1996) ("We will not . . . assume that Congress intended for that jurisdiction[al] [provision] to be meaningless."); *Benavides v. DEA,* 968 F.2d 1243, 1248 (D.C.Cir.1992) (rejecting Attorney General's interpretation of statutory provision because it would make provision "either superfluous or meaningless"); *RCA Global Communications, Inc. v. FCC,* 758 F.2d 722, 733 (D.C.Cir.1985) (rejecting interpretation that "would deprive [the provision] of all substan-

tive effect, a result self evidently contrary to Congress' intent").

Perhaps recognizing the weakness of such an interpretation of section 2104(a), the Secretary attempts to ascribe a wartime significance to section 2104(a). His attempt fails. The Secretary asserts that section 2104(a) is needed simply to preserve his ability to delegate Subtitle II powers and duties to Coast Guard officials in time of war, when the Coast Guard reverts to the administrative control of the Department of the Navy. This assertion is patently erroneous. Another provision of Subtitle II explicitly directs that when the Coast Guard operates as part of the Navy, the "Secretary" referred to in various sections of Title 46 (including section 2104(a)) is not the Transportation Secretary but the Secretary of the Navy.[7] *See* 46 U.S.C.A. § 2101(34) (West Supp.1997) ("'Secretary', except in Part H, means the head of the department in which the Coast Guard is operating."); *accord* S.Rep. No. 98–56, at 8 (1983) ("This bill universally vests all authority in the 'Secretary of the Department in which the Coast Guard is operating,' and provides authority to the Secretary to delegate and allow for subdelegation."). Accordingly, when the Coast Guard operates as part of the Navy, only the Secretary of the Navy can delegate Subtitle II responsibilities pursuant to section 2104(a). The provision cannot be interpreted, then, merely to preserve the Transportation Secretary's Subtitle II delegation authority in time of war.

The Secretary's view of section 2104(a) is also irreconcilable with the statutory construction principle, *expressio unius est exclusio alterius,* that is, the "mention of one thing implies the exclusion of another thing." *Ethyl,* 51 F.3d at 1061 (internal quotation omitted). That section 2104(a) authorizes delegations to Coast Guard officials only cannot be disregarded. According to the *expressio unius* canon, the Congress, in drafting section 2104(a) this way, intended to exclude delegations to non-Coast Guard officials.[8] And to the extent section 2104(a) may be deemed to conflict with section

7. Structurally, it would also be strange for the Congress to address this matter in a portion of Subtitle II that does not refer even indirectly to the Coast Guard's transfer to Navy control.

8. The trial court found (and the Secretary argues) that *expressio unius* cannot be applied unless the statute possesses some undefined measure of specificity that section 2104(a) lacks. While the cases cited as authority for this propo-

322(b) (itself a disfavored construction, *see Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879, 114 S.Ct. 1992, 2002, 128 L.Ed.2d 842 (1994) ("[W]hen possible, courts should construe statutes ... to foster harmony with other statutory and constitutional law.")), the former as the more specific provision controls, again according to the traditional tools of statutory construction. *See Edmond v. United States*, —— U.S. ——, ——, 117 S.Ct. 1573, 1578, 137 L.Ed.2d 917 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs.").

■ The Secretary next argues that because the Congress did not *expressly* prohibit delegation of Subtitle II powers and duties to a non-Coast Guard official in section 2104(a), yet elsewhere *did* so proscribe, the former omission indicates a legislative intent consistent with the Secretary's reading of section 2104(a).[9] This rule of statutory interpretation, however, has force only if the two provisions in question are included within the same legislative enactment. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in *another section of the same Act*, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' ") (quoting, as authoritative, *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)) (brackets original; emphasis added); *cf. Pure Oil Co. v. Suarez*, 384 U.S. 202, 206, 86 S.Ct. 1394, 1396–97, 16 L.Ed.2d 474 (1966) (legislative intent cannot fairly be inferred from different language in two sections of different enactments). The express delegation proscriptions to which the Secretary refers—the Port and Tanker Safety Act of *1978*, codified at 33 U.S.C. § 1229, and a *1984* amendment to Subtitle II, 46 U.S.C.A. § 8503(c) (West Supp.1997)—are plainly not part of the *1983* Act containing section 2104(a).

Even if the proscriptions were in the same enactment as section 2104(a), it would not support the inference that the Congress intended section 322(b) to override the limiting language of section 2104(a). This is so because section 2104(a) was enacted as part of the recodification of Title 46 and, as such, is a manifestly inappropriate legislative vehicle to which to apply the rule because any inconsistency arising from the earlier enactment (like section 322(b)) is, absent a contemporaneous revision, merely carried forward by the recodification. *Cf. Fourco Glass Co. v. Transmirra*, 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957) ("[I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.").

Most significantly,

sition do not appear to establish such a requirement—*see, e.g., Michigan Citizens*, 868 F.2d at 1293 (applying *expressio unius* at *Chevron* step one without mentioning specificity requirement)—any specificity that may be required to invoke the canon is easily met here: section 2104(a) delineates the class of permissible delegatees as officers, employees and members of the Coast Guard, or, in special circumstances, certain Customs Service officers or employees.

9. The canon of construction here urged by the Secretary—namely, that we should infer a legislative intent to permit delegation where Congress has not expressly proscribed it, having proscribed it elsewhere, differs from the *expressio unius* canon. *Expressio unius* has been described as follows:

Although the *expressio unius* maxim has had widespread legal application, there is nothing peculiarly legal about it. It is a product of logic and common sense. It acts merely as an aid to determine legislative intent and does not constitute a rule of law. It expresses the learning of common experience that when people say one thing they do not mean something else. 2A Norman J. Singer, *Sutherland Stat. Const.* § 47.24 (5th ed.1992) (internal quotation marks and notes omitted). The canon relied on by the Secretary, however, according to the same commentator, works differently:

Caution must be exercised in applying the rule that one statute will be interpreted to correspond to analogous but unrelated statutes for the reason that by way of contrast an inclusion or exclusion may show an intent or convey a meaning exactly contrary to that expressed by analogous legislation. Therefore, the rule tends to be of greater value where analogy is made to several statutes or a general course of legislation.

Id. vol. 2B, § 53.05 (notes omitted). But there is no course of legislation expressly proscribing delegation of Subtitle II powers and duties. Instead, the Secretary points only to a provision of the Port and Tanker Safety Act of 1978, codified as amended at 33 U.S.C. § 1229, and a 1984 amendment to Subtitle II, codified as amended at 46 U.S.C.A. § 8503(c) (West Supp.1997).

[t]o suggest, . . . that *Chevron* step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.* when the statute is not written in "thou shalt not" terms), is both flatly unfaithful to the principles of administrative law . . . and refuted by precedent. . . . Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well.

*Railway Labor Executives' Ass'n v. National Mediation Bd.,* 29 F.3d 655, 671 (D.C.Cir. 1994), *cert. denied,* 514 U.S. 1032, 115 S.Ct. 1392, 131 L.Ed.2d 243 (1995); *accord Ethyl,* 51 F.3d at 1060 ("We refuse, once again, to presume a delegation of power merely because Congress has not expressly withheld such power."); *cf. Engine Mfrs. Ass'n v. EPA,* 88 F.3d 1075, 1088 (D.C.Cir.1996) ("[I]f [the text] clearly requires a particular outcome, then the mere fact that it does so implicitly rather than expressly does not mean that it is 'silent' in the *Chevron* sense."); *Girouard v. United States,* 328 U.S. 61, 69, 66 S.Ct. 826, 830, 90 L.Ed. 1084 (1946) ("It is at best treacherous to find in [such] congressional silence alone the adoption of a controlling rule of law."). Accordingly, the absence of an express proscription—whether in section 2104(a), section 322(b), GLPA, or the Corporation's statutory charter—provides no green light to ignore the proscription necessarily implied by the limiting language of section 2104(a).

### B. The Legislative History of Section 2104(a)

The Secretary's attempts to overcome the plain meaning of section 2104(a) by reference

to its legislative history are equally unsuccessful.[10] The relevant committee reports make clear that section 2104(a) is intended to be an affirmative grant of authority, not a clarification of the Secretary's existing authority under section 322(b): "Section 2104 provides the Secretary with authority to delegate duties and powers[.]" H.R.Rep. No. 98–338, at 131 (1983), *reprinted in* 46 U.S.C.A. Legislative History App. at 541 (West Supp.1997); *accord* S.Rep. No. 98–56, at 8 (1983) ("This bill . . . provides authority to the Secretary to delegate and allow for subdelegation."). If the Secretary's view of section 2104(a) were correct, the Congress would have no need to "provide[ ] the Secretary with authority" he already possessed under section 322(b).

Nevertheless, the Secretary refers to language in the House Report accompanying the 1983 recodification of Subtitle II, which, in relevant part, recites:

The word "shall" is used in the mandatory and imperative sense. *The word "may" is used in the permissive sense, as "is permitted to" and "is authorized".* The words "may not" are used in a prohibitory sense, as "is not authorized to" and "is not permitted to".

H.R.Rep. No. 98–338, at 121 (1983), *reprinted in* 46 U.S.C.A. Legislative History App. at 529 (West Supp.1997) (emphasis added). The Secretary thus argues that reading the "may" language in section 2104(a) as implicitly prohibiting delegation to a non-Coast Guard official would in fact transform "may" into "may not".

■ To say that "may" is permissive does not lead to the conclusion that it permits *everything,* irrespective of other unambigu-

---

**10.** While ordinarily we have no need to refer to legislative history at *Chevron* step one, "[r]eference to statutory design and pertinent legislative history may often shed new light on congressional intent, notwithstanding statutory language that appears superficially clear." *NRDC,* 57 F.3d at 1127 (internal quotation marks omitted); *accord Ethyl,* 51 F.3d at 1062–63 (reviewing legislative history under *Chevron* step one and concluding that "[a]t best, the legislative history is cryptic, and this surely is not enough to overcome the

plain meaning of the statute"); *City of Cleveland v. Nuclear Regulatory Comm'n,* 68 F.3d 1361, 1366 n. 4 (D.C.Cir.1995) ("[W]e may consider a provision's legislative history in the first step of *Chevron* analysis to determine whether Congress' intent is clear from the plain language of the statute."). We consider legislative history here only because the Secretary argues that it evinces a congressional intent at odds with what the language of section 2104(a) otherwise manifests.

ous words of limitation included in the sentence in which the term is used. *Cf. Ethyl,* 51 F.3d at 1059 (although statute provided that Administrator "may" consider certain factors in determining whether to waive statutory prohibition, "Congress's use of the word 'may' does not ... open the door for the Administrator to consider any factor she deems 'in the public interest' before granting or denying a ... waiver."). Rather, the word "may" in section 2104(a) merely grants discretion to the Secretary, the limits of which are ascertained by reference to the section's other language, its structure and its purpose.[11] Accordingly, the quoted House Report language does not support the Secretary's interpretation of section 2104(a) and it cannot be deemed inconsistent with the plain meaning of the language of section 2104(a)— i.e., to give the Secretary authority either to retain Subtitle II powers and duties or to delegate them to a Coast Guard official.

The other item of legislative history the Secretary points to is a portion of the Senate Report accompanying the 1983 recodification of Subtitle II, which states in relevant part:

Section 2104 sets forth broad delegation authority for the Secretary, *including* the authority to delegate duties and powers under subtitle II to any Coast Guard official.

S.Rep. No. 98–56, at 12 (1983) (emphasis added). The Secretary contends that "including" means that the Congress intended to empower the Secretary to delegate Subtitle II powers and duties to non-Coast Guard officials or employees. While this is one possible interpretation of the "including" language, the non-Coast Guard officials suggested by "including" are more likely the designated Customs Service officials who can act for Coast Guard officials pursuant to section 2104(b). *See* note 6, *supra.*

### C. Implied Limits on the Secretary's Section 322(b) Authority

The conclusion that section 2104(a) necessarily limits the Secretary's section 322(b)

delegation authority is also buttressed by the holding in *United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974). In *Giordano,* a pre-*Chevron* case, the Supreme Court faced a question much like the one presented here: How to construe two grants of delegation authority— a broad one and a specific one—so as to give effect to the Congress's intent in enacting each. The Court held that although the Attorney General possesses general delegation authority under 28 U.S.C. § 510, that section does not authorize him to expand the specific delegation permitted by 18 U.S.C. § 2516(1), providing that "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize" an application for wiretap authority. 416 U.S. at 513–14, 94 S.Ct. at 1825–26. In other words, the Court held that although section 2516(1) does not *expressly* proscribe delegation of the wiretap authority to the Attorney General's Executive Assistant, "it appears wholly at odds with the scheme and history of the Act to construe § 2516(1) to permit the Attorney General to delegate his authority at will, whether it be to his Executive Assistant or to any officer in the Department other than an Assistant Attorney General." *Id.* at 523, 94 S.Ct. at 1830.

Like the provisions at issue in *Giordano,* section 2104(a) is more specific than section 322(b) and, although it does not expressly prohibit use of the Secretary's section 322(b) authority, its language and legislative history manifest the Congress's intent to limit the individuals to whom Subtitle II powers and duties—which involve primarily maritime safety and commerce—may be delegated. Accordingly, we reach the same conclusion here that the Supreme Court reached in *Giordano:* section 2104(a), the more specific (and limited) delegation authority, precludes the use of section 322(b) to delegate Subtitle II duties and powers to non-Coast Guard officials.

---

**11.** Indeed, if the Secretary relied on the same "permissive" definition of "may" in construing section 322(b), the provision would authorize him to delegate "duties and powers of the Secretary to an officer or employee of the Depart-

ment"—or to an officer or employee *not of* the Department. This construction would ignore the limitation imposed by section 322(b)'s key prepositional phrase—"officer or employee *of the Department.*"

Finally, construing section 322(b) in this fashion also gives effect to the Congress's evident intent to circumscribe the Corporation's operations within narrow geographic and functional boundaries. In other words, the Corporation's charter—relating to the "construct[ion] ... operat[ion] and maint[enance]" of "deep-water navigation works" in specified portions of the Saint Lawrence River—necessarily limits the Secretary's section 322(b) authority. *See Ashwood Manor Civic Ass'n v. Dole,* 619 F.Supp. 52, 65–69 (E.D.Pa.) (concluding that even though section 322(b) gives Secretary broad authority to delegate agency powers and duties, scope may be limited by nature of power delegated as well as by delegatee's ability to exercise such authority), *aff'd without pub. op.,* 779 F.2d 41 (3d Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1460, 89 L.Ed.2d 717 (1986); *cf. Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) ("When a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties.").

While the trial court erred in not applying *Chevron* step one to both sections, we do not mean to suggest that the error lies in not using the *identical Chevron* step with respect to both. Rather, we conclude that *Chevron* step one requires that the plain language of sections 2104(a) and 322(b) be read together so as to give effect to the Congress's evident intent in enacting both. *See Engine Mfrs. Ass'n,* 88 F.3d at 1088 ("[If] scope of the authorization ... is clear in the statute, the scope of the implied preemption can be resolved at *Chevron* step one."). Both the Secretary and the district court failed to so read them. And even if section 322(b)'s scope is ambiguous, requiring recourse to *Chevron* step two, we would be compelled to reject the Secretary's interpretation as unreasonable because it "would deprive [section 2104(a) ] of virtually all effect." *American Fed'n of Gov't Employees v. FLRA,* 798 F.2d 1525, 1528 (D.C.Cir.1986). If no "legislative history of exceptional clarity" exists to support such a construction, we have consistently refused to do so. *Id.* (internal quotation marks omitted).

## III. CONCLUSION

For the foregoing reasons we conclude that the Secretary lacks authority to delegate GLPA powers and duties to the Corporation. Accordingly, we reverse the grant of summary judgment and remand to the district court with instructions to vacate the Secretary's December 1995 final rule—Organization and Delegation of Powers and Duties; Transfer of Great Lakes Pilotage Authority From the Coast Guard to the Saint Lawrence Seaway Development Corporation, 60 Fed.Reg. 63,444 (1995) (codified at 49 C.F.R. § 1.52(d)-(e) (1997)).

*So ordered.*