

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Mar 27 2025 03:27PM
Clerk Review: Mar 27 2025 03:27PM
Filing ID: 75945065
Case No.: 2024-SCC-0001-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**BANK OF SAIPAN,**
*Plaintiff-Appellant,*

*v.*

**JANE OHRY,**
*Defendant-Appellee.*

**Supreme Court No. 2024-SCC-0001-CIV**

---

**SLIP OPINION**

**Cite as: 2025 MP 01**

Decided March 27, 2025

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Civil Case No. 22-0274
Associate Judge Wesley Bogdan, Presiding

———————

INOS, J.:

¶ 1    Appellant Bank of Saipan ("the Bank") appeals from an order dismissing its complaint seeking to recover money the probate court distributed to Jane Ohry ("Ohry"). Because the statutory procedure for filing objections is mandatory, the court did not err in dismissing the complaint. The court did not abuse its discretion in denying a stipulation for judgment because dismissal of the complaint rendered it moot. For the following reasons, we AFFIRM the dismissal.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    The estate of Macario E. Scaliem ("the estate") was probated under 8 CMC §§ 2501–2506, the statute governing settlement of estates of limited value. The estate consisted of $4,871.25 in bank accounts with Bank of Guam and Bank Pacific. Macario's children, as heirs, agreed to distribute the money to their mother, Macario's surviving domestic partner.[1]

¶ 3    Over ten months after the probate court entered final distribution of the estate, the Bank sued Ohry personally in a separate action, demanding the money distributed to her from the estate. The basis for this claim was the unpaid balance from an unsecured promissory note Macario and the Bank had executed in 2019. The Bank claims that at the time of Macario's death he owed $6,593.17. Ohry was not a signatory to the note, and the Bank did not file a claim or object to the distribution during the probate proceedings. The complaint alleged that Ohry was a transferee in the probate proceeding, leaving her personally responsible under 8 CMC § 2506 for Macario's debt up to the amount she received under the decree of distribution.

¶ 4    Ohry did not answer the complaint on time, and the Bank filed an entry of default and moved for a default judgment. The court rejected both filings and directed the Bank to file a motion for a default hearing. The Bank appealed the court's rejection of the entry of default, but then voluntarily dismissed that appeal because it had obtained Ohry's signature on a stipulation for judgment consisting of the money distributed to Ohry plus an additional $322.00 in costs at three percent interest, to be paid in bi-weekly installments of $50.00 to the Bank's attorney. The Bank submitted this stipulation for judgment to the court, but the court dismissed the complaint without prejudice on the basis that 8 CMC § 2506 requires creditors to submit objections in the probate case rather than pursue separate actions. Finding that the time to file an objection in the underlying probate case had not yet passed, the court reasoned that "where a statutory remedy is provided, the procedure prescribed therein must be strictly pursued to the exclusion of other methods of redress unless the legislature 'explicitly'

---

[1]    Both the probate court and the Bank refer to Ohry as Macario's "common law wife." Though they never married, Macario and Ohry were long-term domestic partners, and raised three now-adult children. If Ohry and Macario had been legally married, this case would be moot under 8 CMC § 2602 because a surviving spouse is entitled to a homestead allowance of up to $5,000.00, exempt from and with priority over all claims against the estate.

reveals in a statute that it does not intend for such exclusivity." App. at 18 (quoting *White v. Conestoga Title Ins. Co.*, 617 Pa. 498, 519 (2012)). Because it had dismissed the complaint, the court found the stipulation for judgment to be moot. Instead of returning to probate court, the Bank filed this appeal.

## II. JURISDICTION

¶ 5     We have jurisdiction over final judgments of the Superior Court. NMI CONST. art. IV, § 3. A dismissal of an action without prejudice is an appealable final judgment. *Dep't of Pub. Lands v. Blas*, 2023 MP 7 ¶ 8.

## III. ISSUES AND STANDARD OF REVIEW

¶ 6     The Bank argues two issues on appeal. First, that the Superior Court erred in dismissing the complaint based on an interpretation of 8 CMC § 2506 requiring an objection to be filed in probate. Second, that the Superior Court failed to honor a stipulation for judgment.

¶ 7     We review questions of statutory interpretation de novo. *Commonwealth v. Guerrero*, 2014 MP 15 ¶ 21. We review the enforcement of the terms of a stipulation for judgment for abuse of discretion. *See Bank of Hawaii v. Tamanrang*, 2020 MP 9 ¶ 14.

## IV. DISCUSSION

*A.     Under 8 CMC § 2506, a party claiming an interest in the estate must file an objection in the probate case.*

¶ 8     8 CMC § 2506 establishes a procedure for a creditor to file a claim (labeled an objection) against a transferee in the probate proceedings for an estate of limited value. The Bank contends that while the statute permits such claims within probate, it does not preclude the filing of a separate action against a transferee outside of probate. The relevant provision states: "any party claiming an interest in the property *may*, after demand, file an objection to the court setting forth the grounds that entitle him to the property." 8 CMC § 2506 (emphasis added). When interpreting a statute, if the statutory language gives rise to more than one reasonable interpretation, our duty is "to find [the] interpretation which can most fairly be said to be [e]mbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that the N.M.I. legislature manifested." *Nakatsukasa v. Superior Court*, 1999 MP 25 ¶ 14.

¶ 9     The word "may" in this context is ambiguous. It is unclear whether it merely grants discretion to file an objection in probate, or allows a party to choose between filing an objection in probate and pursuing a separate action. The Bank argues the latter. Indeed, we have held that "[u]nless the context of its use suggests otherwise, the word 'may' in a statute connotes a permissive rather than a mandatory provision." *In re Estate of Rofag*, 2 NMI 18, 26 n.6 (1991) (quoting *Bauer v. McCoy*, 1 CR 248, 268 (D.N.M.I. 1982)). In *Rofag*, appellants argued that the statutory creation of a separate procedure for determining the validity of a customary adoption meant that the probate court lacked discretion to determine the validity of an adoption during probate proceedings. We disagreed, holding that the statute did not expressly or impliedly provide that the procedure was

exclusive. *Id*. at 26. Hence, while "may" can signify permissiveness, the lesson from *Rofag* is that we look to statutory context to determine whether the procedure was intended to be exclusive. When the context suggests otherwise, "may" merely indicates discretion. *See Halverson v. Slater*, 129 F.3d 180, 187–88 (D.C. Cir. 1997) ("[when] other unambiguous words of limitation [are] included . . . the word 'may'. . . merely grants discretion . . . the limits of which are ascertained by reference to the section's other language, its structure, and its purpose.")

¶ 10    8 CMC §§ 2501–2506 establish a statutory framework for the summary administration of estates of limited value. We have not previously interpreted 8 CMC § 2506, or any related provisions. The source of the statute, Public Law 3-106, states that the law shall be "liberally construed and applied to promote its underlying purposes and policies." PL 3-106, ch. 1, § 4(a) (codified at 8 CMC § 2104). The underlying purposes and policies are:

> (1)    to simplify and clarify the law and custom concerning the affairs of decedents and missing persons;
> (2)    to discover and make effective the intent of a decedent in distribution of his property;
> (3)    to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors; and
> (4)    to realize the compelling interest of the Northern Mariana Islands in preserving the historic traditions and culture of its citizens of the Northern Marianas descent.
> *Id*. at ch. 1, § 4(b)(1)–(4).

The goals of simplifying and clarifying the law, as well as promoting a speedy and efficient system for resolving and distributing an estate provide insight into the overarching purpose of the statutory framework tying together these provisions: the law aims to minimize piecemeal litigation and to promote the speedy distribution of small estates. This purpose weighs against interpreting 8 CMC § 2506 to give parties unbridled choice to either follow the statutory procedure or file a separate action.

¶ 11    An analysis of the original source of the law, the Trust Territory Code ("TTC") further supports the conclusion that the procedure is mandatory. Public Law 3-106 was largely carried over from the TTC, but with key distinctions. When a difference exists between a statute and its predecessor, we typically find that the drafters intended for them to have different meanings. *Commonwealth v.*

*Hasinto*, 1 NMI 377, 382–83 (1990). A comparison between 8 CMC § 2506 and its TTC counterpart reveals a deliberate change:

| Responsibility of Transferee [TTC] | Responsibility of Transferee [CMC] |
| --- | --- |
| The transferee shall be personally responsible for any property received by him under any order issued pursuant to this chapter, and any party claiming an interest in such property may, after demand, <u>maintain an action against the transferee; provided, that no such</u> action shall be brought against the transferee after two years from the date of the order under which the property was transferred to him. 13 TTC § 55 (1970) (emphasis added). | The transferee shall be personally responsible for any property received by him under any order issued pursuant to this article, and any party claiming an interest in the property may, after demand, <u>file an objection to the court setting forth the grounds that entitle him to the property. Upon the filing of an objection, the court shall, after notice to the petitioner or other transferee and objector, schedule the matter for hearing and make findings and enter orders as justice requires. No separate</u> action shall be brought against the transferee after two years from the date of the order under which the property has transferred to him. 8 CMC § 2506 (emphasis added). |

¶ 12 The two provisions are identical, except for the clauses pertaining to the actions of a claiming party. Where under the TTC a third-party claimant could maintain a separate action against a transferee, the Commonwealth Code substitutes a procedure to keep all claims within the probate proceeding. If we were to interpret "may" as uninhibitedly permissive, there would be no substantive difference between the TTC—which allowed the filing of a separate action against a transferee—and the present statute, which lays forth a formal claim filing procedure. Such an interpretation would contradict our general principle of statutory construction to give meaning and effect to every provision. *Rebuenog v. Aldan*, 2010 MP 1 ¶ 35. It would also undermine the legislative intent to construe the statute liberally for the purpose of simplifying, clarifying, expediting, and reducing inefficiency. PL 3-106, ch. 1, § 4.

¶ 13 Looking to the statute's broader context, 8 CMC § 2505 further strongly indicates that 8 CMC § 2506's claim-filing procedure was intended to be mandatory. Under 8 CMC § 2505, if it comes to the transferee's attention that the decedent's debts exceed the value of the property received, the matter shall be reported to the court, administration of the estate by the transferee must cease immediately, and administration of the estate is returned to the court. At that point, the probate court would proceed under 8 CMC § 2925, which lays out the priority of claims. This provision ensures that debts are settled in the proper order, with administrative costs, funeral expenses, and medical bills taking precedence

over other obligations. Allowing creditors to bypass this process and pursue separate actions would disrupt the statutory framework, enabling lower priority creditors to circumvent the established order and impose liability on a distributee for the estate's full value. Such a scenario would be particularly unjust. Moreover, it would incentivize creditors to ignore 8 CMC § 2506 altogether, sidestep probate, and unfairly gain priority for their claims over others the law prefers.

¶ 14    The law's strong preference for filing objections under 8 CMC § 2506 does not mean the filing of a separate action against a transferee is always prohibited. 8 CMC § 2506 anticipates that perhaps, under some circumstances, separate actions may be appropriate, and it establishes a two-year limit for bringing such claims. However, to afford the statute its meaning and construe it liberally in favor of speed and efficiency, the filing of an objection in probate must be mandatory, unless the specific circumstances of a case would require otherwise.

¶ 15    NMI law does not specify when a creditor may bypass the claim filing requirement in 8 CMC § 2506, but nothing in this case suggests the Bank had grounds to do so. Under ordinary intestacy proceedings, when notice of the probate has not been published, a creditor may maintain an action against an heir or devisee within 3 years of the decedent's death. 8 CMC § 2924.[2] But, as the Bank conceded during oral argument, the law does not require published notice for probate of estates in summary administration proceedings, like the instant case.[3] Instead, creditors must exercise vigilance, and be aware when a debtor's death has led to a cessation of payment. The law presumes that diligent creditors monitor their accounts, and even permits creditors to initiate summary administration if no probate is opened within 90 days of a debtor's death. 8 CMC § 2501.

¶ 16    In this case, the Bank sent a demand letter to Ohry more than 15 months after Macario's death, nearly 9 months after the court entered final distribution of the estate. App. at 4. Though published notice was not required or given, the Bank should have been aware that Macario had defaulted on his payments. The probate of Macario's estate was docketed just two months after his death. *See* App. at 4; *In re Macario Scaliem*, Civ. No. 21-0260 (NMI Super. Ct. September

---

[2]    Ohry is not an heir or devisee, but a distributee. *See* 8 CMC § 2107(g)–(o) (defining "devisee," "heir," and "distributee" as legally distinct terms).

[3]    The former rules of probate procedure specifically carve out summary administration of estates of limited value, stating that procedure for summary administration is governed by the applicable law, rather than the rules of probate procedure. COM. R. PRO. 24 (1996). 8 CMC §§ 2501–2506 lay out the procedure for the filing of a petition for summary administration, but do not include any public notice requirement. The current rules of probate procedure change this, establishing procedure for summary administration, and requiring that notice be published according to NMI R. PROB. P. 6 and 7. NMI R. PROB. P. 19(c)(1). However, the current rules, effective November 13, 2024, were adopted after the decree of distribution was entered in the probate case, so the former rules of probate procedure govern. The Bank has not alleged that the lack of a notice requirement under the former rules violates due process.

16, 2021) (Sworn Petition to Settle Estate of Limited Value) at 3. Though there was no published notice that the probate was underway, the Bank was certainly on notice that Macario had defaulted on payment. In fact, for summary administration cases, we are not convinced that notice via publication is necessarily better at informing a creditor that something has happened to a debtor than a default in payment would be. The state of Hawaii seems to agree, allowing a court to deem notice by publication unnecessary for probating estates with a total value of $10,000.00 or less. Haw. Rev. Stat. § 560:3-1206.

¶ 17    Despite ample opportunity to file a claim, the Bank took no action throughout the five-month period during which the probate was publicly available on the court's docket. While perfect diligence may not always be feasible, a 15-month delay following a debtor's default requires sufficient justification before we will simply do away with a statutory scheme intended to promote speed and efficiency, or allow a creditor to circumvent the court's ability to administer the priority of claims under 8 CMC §§ 2505 and 2924.

### B.    *Ohry is not a transferee under 8 CMC §§ 2503–2506.*

¶ 18    Even if the procedures in 8 CMC § 2506 were not mandatory, dismissal would still have been proper because nothing in the record indicates Ohry is a transferee. 8 CMC §§ 2503–2506 include an optional procedure the court may initiate "if it appears to the court that the ends of justice will be served." 8 CMC § 2503. Under this provision, the court can order the transfer of the decedent's property from the entity holding it, such as the banks in this case, to a designated transferee who assumes the responsibility for paying debts and distributing the remaining assets. *Id.* This transfer order effectively establishes the transferee as a temporary administrator of the estate's limited assets,[4] shifting liability from the original property holder to the transferee. *Id.*; *Id.* § 2506.[5] When transfer has been made, a party asserting a claim to the estate's property, may, after demand, file an objection in court and the court must hold a hearing and issue a determination. *Id.* § 2506. When the debts of the estate exceed its value, the transferee must cease all activity and make a full report to the court of the situation, at which point the court must direct the transferee on how to proceed. *Id.* § 2505. Finally, separate actions based on the transferee's personal liability

---

[4]    The Supreme Court of Pohnpei has interpreted 13 TTC § 55 (8 CMC § 2503's predecessor statute) as creating an administrator position, despite terming it a "transferee." *See In re Estate of Relio Yamada*, 3 P. S. Ct. R. 399, 410–413 (1989); *cf. Nenjir v. Rilan*, 4 TTR 277, 278 (1969) (interpreting TTC § 343(c), the predecessor to 13 TTC § 55, to require that when there are "alleged debts or . . . no proper and clear agreement between the possible heirs, an estate must be administered").

[5]    The purpose for the appointment of a transferee under 8 CMC § 2503 is generally the prevention of waste and the shifting of liability for the decedent's property. For example, in a situation where a bank holds the funds of an estate in summary administration, the court may order the transfer of those funds to a third party, such as an heir or petitioner, to shift tax liability for those funds from the bank. *See* Cal. Prob. Code § 13106.

for the estate's property must be brought within two years of the date of the order transferring the estate's property to the transferee. 8 CMC § 2506.

¶ 19    The Bank believes Ohry is a transferee under 8 CMC § 2503. Both the complaint and the initial demand letter state that the probate court entered an order under 8 CMC § 2503 on January 27, 2022, transferring Macario's assets to Ohry. App. at 4, 10. This is incorrect. The January 27 order is an order of distribution under 8 CMC §§ 2501 et. seq. declaring that the money in Macario's bank accounts is "hereby distributed to Jane Ohry, the common law wife of the decedent" and authorizing her "to withdraw the monies in the said bank accounts." App. at 8–9. This was not an order temporarily transferring property to Ohry for her to pay debts and make distribution to Macario's heirs; rather, it was a direct distribution to her as Macario's "common law wife" and mother of his heirs. Further, the petition filed by Macario's children, his only heirs, requested that the court distribute the funds to their mother. *See In re Macario Scaliem*, Civ. No. 21-0260 (NMI Super. Ct. September 16, 2021) (Sworn Petition to Settle Estate of Limited Value) at 2.

¶ 20    Under 8 CMC § 2503, which is an expressly optional provision, a court does not simply transfer property to a transferee, it also directs the transferee to pay all debts and distribute any remaining assets to the appropriate heirs. *Id.* There is nothing in the record to suggest that the probate court intended to order a transfer under 8 CMC § 2503, instead of a decree of distribution. The petition filed by Macario's heirs clearly indicated their agreement that their father's limited assets be distributed to their mother. Ohry, therefore, is a distributee, not a transferee, because she received the monies directly from the court as a beneficiary, rather than as a creditor or purchaser. *See id.* § 2107(g)–(o).[6]

¶ 21    8 CMC § 2506 creates a limited cause of action against a transferee-administrator for the proper payment of estate debts and distribution of assets. Because the probate court never designated Ohry as a transferee under 8 CMC § 2503, the Bank does not have a cause of action against her under 8 CMC § 2506 and the complaint was properly dismissed.

   *C.    Whether the Bank may bring a late claim against the Estate is a question of jurisdiction for the probate court.*

¶ 22    In dismissing the case, the lower court assumed that Ohry was a transferee under 8 CMC § 2506, and determined that the time to file a claim in the probate had not passed based on an incorrect reading of 8 CMC § 2506. Because the probate court entered a decree of final distribution and distributed the entirety of

---

6    The State of California has a similar statutory framework for summary administration, and it distinguishes between a transferee tasked with receiving the estate property, paying debts and making distribution, *see generally,* Cal. Prob. Code §§ 13100–13117, and a distributee, who is the final recipient of the estate assets. *Compare* Cal. Prob. Code § 13109.5 (establishing liability in a transferee), *with* Cal. Prob. Code § 9392 (laying out the conditions under which a distributee may be liable to a creditor of the decedent).

the estate's assets to Ohry, the time to file a claim in the probate case has passed. The remaining question, then, is whether the probate court has jurisdiction to re-open the probate to consider the Bank's claim.[7] Generally speaking, the principle is firmly established that probate judgments are afforded a particularly high degree of finality, even greater than that of regular judgments, and claims filed after final distribution are barred. *In re Hillblom*, 2011 MP 5 ¶ 14. In *Hillblom*, we held that "after an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate process." *Id.* (quoting *Reed v. Campbell*, 476 U.S. 852, 855–56 (1986)).

¶ 23    The probate court in *Hillblom* entered an injunction order finding as a matter of law that late claims cannot reach distributed assets. *Id.* ¶ 6. The position that distributed funds are outside of the probate court's jurisdiction following final distribution is supported in several other jurisdictions. *See, e.g., Hartford Accident & Indem. Co. v. Goldberg*, 61 P.2d 704, 708 (Okla. 1936) ("When a decree of distribution is made, the probate court has no longer jurisdiction of the property distributed, unless to compel delivery . . . . [a]nd as the court, after issuing a decree of distribution of an entire estate, loses jurisdiction of the property distributed, it cannot afterwards make a different disposition of a portion of the property distributed. The probate court loses jurisdiction of the property distributed after decree rendered for all purposes whatever except that of enforcing the order.") (quoting 2 Church on Probate Law and Practice (2d Ed.) p. 1858); and *In re Estate of Stevenson*, 445 P.2d 753, 756 (Wyo. 1968) ("In the absence of appeal or other timely action to challenge the settlement and distribution made by the decree of distribution, the courts have no power to take back what has been already distributed. It would be hard to imagine how much money and property has been spent or disposed of by distributees, and there would be no way to undo what has been done in the probate proceeding.")

¶ 24    The probate court's injunction order in *Hillblom* was not appealed, and we have not had occasion to determine whether all distributed assets in all cases are unreachable as a matter of law; that particular question has not been adequately raised or briefed here. Under some circumstances, there may be justification for reopening an estate after final distribution. *See, e.g.*, *Ford*, 222 P.2d at 746 (finding that an estate may be reopened to readminister and distribute property that was overlooked in the original distribution decree). However, it is safe to say that whether circumstances exist that would justify the probate court asserting

---

7    *See Ford v. Banks*, 222 P.2d 744, 746 (1950) (the Oklahoma Supreme Court finding that the ability to reopen a case in probate after final distribution is a question of jurisdiction).

jurisdiction to consider the Bank's late claim is a threshold question for the probate court to determine if the Bank elects to make such a petition.

### D.     *The court did not abuse its discretion in deeming the stipulation for judgment moot.*

¶ 25     The Bank also claims the trial court abused its discretion by declaring the stipulation for judgment moot following the dismissal of the complaint. Appellant's Br. at 8. The Bank argues that under *Bank of Hawaii v. Tamanrang*, the court was obligated to accept the terms of a stipulation for judgment. *Id.* There, we determined that "a court will enforce the clear terms of a stipulation unless it has not been entered into voluntarily, its terms violate public policy, or other extenuating circumstances exist." *Tamanrang*, 2020 MP 9 ¶ 12 . We further held that when the parties have entered into a stipulation for judgment, the court lacks equitable power to modify that agreement in the absence of fraud, overreach, or other reason for modification. *Id*. ¶ 14.

¶ 26     However, *Bank of Hawaii* does not apply here. There, the court modified the terms of a stipulated judgment, whereas here the court denied entry of a stipulated judgment on the basis that the complaint had already been dismissed and the judgment was moot. App. at 19. The relevant question is whether it is appropriate to dismiss all pending matters as moot when the complaint has been dismissed—a question of jurisdiction. Article IV, Section 2 of the NMI Constitution grants the Superior Court original jurisdiction over all cases in equity and at law, but as a general rule courts lack jurisdiction to decide moot issues. *See Govendo v. Micronesian Garment Mfg.*, *Inc*., 2 NMI 270, 281 (1991). Once the complaint was dismissed, any pending motions, including the stipulation for judgment, became moot. The court did not abuse its discretion in declining to enter judgment in a case that no longer presented a live controversy, even if the request was stipulated.

### V. CONCLUSION

¶ 27     Because the objection procedure in 8 CMC § 2506 is mandatory, unless a party can show good cause for why it could not submit an objection in probate, the order dismissing Appellant Bank of Saipan's complaint is AFFIRMED. Because the time to file a claim in probate has passed, the Bank may only bring its claim if the probate court determines that it has jurisdiction over the funds distributed to Ohry.

SO ORDERED this 27th day of March, 2025.


/s/
_____
ALEXANDRO C. CASTRO
Chief Justice

 /s/
JOHN A. MANGLOÑA
Associate Justice


 /s/
PERRY B. INOS
Associate Justice


COUNSEL

Michael A. White, Esq., Saipan, MP, for Appellant.

Jane Ohry, Pro Se Appellee.

*NOTICE*

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236-9715, fax (670) 236-9702, e-mail Supreme.Court@NMIJudiciary.gov.*



**E-FILED**
**CNMI SUPREME COURT**
E-filed: Mar 27 2025 03:27PM
Clerk Review: Mar 27 2025 03:27PM
Filing ID: 75945065
Case No.: 2024-SCC-0001-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**BANK OF SAIPAN,**
*Plaintiff-Appellant,*

*v.*

**JANE OHRY,**
*Defendant-Appellee.*

---

**Supreme Court No. 2024-SCC-0001-CIV**
Superior Court No. 22-0274-CV

**JUDGMENT**

Appellant Bank of Saipan appeals the trial court's order dismissing its suit against Jane Ohry. For the reasons discussed in the accompanying opinion, the Court AFFIRMS the trial court's decision.

ENTERED this 27th day of March, 2025.

 /s/ _____
JUDY T. ALDAN
Deputy Clerk of the Supreme Court