**R.G. JOHNSON COMPANY, INC. Plaintiff.**

**v.**

**Kenneth S. APFEL Commissioner for Social Security, et al., Defendants.**

**Civil No. 97–0003(HHK).**

United States District Court, District of Columbia.

Feb. 11, 1998.

William Henry Howe, Marylou Smith, Howe, Anderson & Steyer, P.C., Washington, DC, for Johnson Co., Inc.

Alexander Daniel Shoaibi, U.S. Atty.'s Office, Washington, DC, for Shirley S. Chater.

Peter Buscemi, Margaret Scott Izzo, Morgan Lewis & Bockius, L.L.P., Washington, DC, for Michael H. Holland, Marty D. Hudson, Thomas O.S. Rand, Elliot A. Segal, Carlton R. Sickles, Gail R. Wilensky, William P. Hobgood.

---

## MEMORANDUM

KENNEDY, District Judge.

Before the court are cross motions for summary judgment filed by the plaintiff. R.G. Johnson Company. Inc. and the defendants, the Commissioner for Social Security ("Commissioner") and the Trustees of the United Mine Workers of America Combined Benefit Fund ("Trustees"). Upon consideration of the motions, the oppositions thereto, the replies, supplemental filings, and the record of the case, the court concludes that the plaintiff's motion should be granted because there are no material facts in dispute and the plaintiff is entitled to judgment as a matter of law.

### I. BACKGROUND

R.G. Johnson Company, Inc. ("New Johnson"), seeks a declaration that it is not obligated to make health-care premium payments for certain beneficiaries to the United Mine Workers of America Combined Benefit Fund ("the Combined Fund") and seeks an injunction restraining the Commissioner from assigning these beneficiaries to it and from pursuing payment of premiums on their behalf. The Combined Fund is a statutory health-care trust created by Congress under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C.A. § 9701 *et seq.* (West Supp.1997) ("the statute" or "the Coal Act"). Under the statute, the Social Security Administration ("SSA") is charged with the responsibility of assigning individual Combined Fund beneficiaries to specific former employers ("signatory operators") under the statutory criteria set forth in 26 U.S.C.A. § 9706 (West Supp.1997). The assigned operators are then required to pay health-care premiums to the Combined Fund to finance the cost of benefits for their assigned beneficiaries. 26 U.S.C.A. § 9704 (West Supp.1997). When a signatory operator is no longer in business, a "related person" of the signatory operator is required to pay the health care premiums. 26 U.S.C.A. § 9706(a) (West Supp.1997).

New Johnson was formed in 1988 when it purchased the operating assets, certain real estate, and the right to use a similar name, of The R.G. Johnson Company ("Old Johnson"). Until this sale, Old Johnson operated as an independent construction contractor performing shaft and slope construction at various coal mines sites. In September 1993, the SSA assigned to Old Johnson, as a "signatory

operator," the responsibility for making payments to the Combined Fund on behalf of certain of its former employees ("beneficiaries"). Following Old Johnson's request for review of the assignments, all were rescinded, apparently on the basis that Old Johnson was no longer in business. The SSA notified New Johnson in 1995 that it was responsible for the payments on behalf of the beneficiaries under the Coal Act because it is a successor company to Old Johnson. New Johnson claims that a successor company is not a "related person" as defined by the statute and thus it is not responsible for the payments. Whether a successor company to a signatory operator may be held liable for payments to the Combined Fund under the statute is an issue of first impression in this jurisdiction.

## II. STANDARD OF REVIEW

*Administrative Review Under the Chevron Framework*

The plaintiff seeks judicial review of the SSA's determination that it is liable for payments on behalf of certain beneficiaries. This court may set aside SSA's determination if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.A. § 706(2)(A) (West 1996). In reviewing an agency action which is based on the agency's interpretation of a statute entrusted to its care, the court must undertake a two-step inquiry, known as the *Chevron* framework. *Eastern Enterprises v. Chater*, 110 F.3d 150, 154 (1st Cir.1997) (citing *Chevron USA Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

> Under this analysis, the court must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue.... If the court can determine congressional intent, then that interpretation must be given effect.... If, on the other hand, the statute is silent or ambiguous with respect to the specific issue, then the court will defer to a permissible agency construction of the statute.

*Halverson v. Slater*, 129 F.3d 180, 184 (D.C.Cir.1997), (quoting *Natural Resources*

*Defense Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C.Cir.1995)).

This *Chevron* analysis, as recently interpreted by the D.C. Circuit Court in *Halverson v. Slater*, governs our interpretation of the statute at issue in this case. More so than previous case law, the *Halverson* decision emphasizes the first prong of the analysis—that the court must first attempt to determine the intent of Congress by using traditional tools of statutory construction. The *Halverson* court reversed the lower court, finding that it "erred by failing to 'exhaust the traditional tools of statutory construction' ..." *Id.* (citation omitted).

## III. DISCUSSION

■ Under the Coal Act, the SSA must assign each Combined Fund beneficiary to a "signatory operator which (or any related person with respect to which) remains in business," in a certain order of preference. 26 U.S.C.A. § 9706(a) (West Supp.1997). The statute authorizes the assignment of liability to a "related person" to a signatory operator, when the signatory operator, who would otherwise be the assigned operator, is no longer in business.

> [A] person shall be considered to be a related person to a signatory operator if that person is—
>
> > (i) a member of the controlled group of corporations (within the meaning of [IRC] section 52(a)) which includes such signatory operator;
> >
> > (ii) a trade or business which is under common control (as determined under [IRC] section 52(b)) with such signatory operator: or
> >
> > (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.
>
> A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).

26 U.S.C.A. § 9701(c)(2)(A) (West Supp. 1997). The statute thus creates four types of related persons: persons described in clauses (i), (ii), and (iii), and persons who are successors in interest to any of the first three types of related persons.

The defendants claim that New Johnson is liable to pay into the Combined Fund on behalf of certain beneficiaries because it is a successor company to Old Johnson. Old Johnson would have been the assigned "signatory operator" responsible for these payments if it were still in business. New Johnson rejoins that a successor company is not a "related person" to a signatory operator, and therefore may not be held liable.

*Statutory Language*

Employing the first step of the *Chevron* analysis, we must use traditional tools of statutory construction to determine if the statute evidences a clear expression of Congress' intent as to the liability of a successor company. The first place to look for the answer to this question is in the language of the statute. The first tenet of statutory construction is that the "plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "In such cases, the intention of the drafters, rather than the strict language, controls." *Id.* "Where, ... the plain language of the statute is clear, the court generally will not inquire further into its meaning, at least in the absence of a clearly expressed legislative intent to the contrary." *Qi–Zhuo v. Meissner,* 70 F.3d 136, 140 (D.C.Cir.1995). However, "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

The plaintiff claims that under the plain meaning of the statute, a successor company to a signatory operator is not liable for Combined Fund payments if it does not fall within any of the four categories of "related persons" as defined by the statute. Consequently, the plaintiff argues that it is not liable because it does not fall within any of these categories. The plaintiff explains:

The first type of related person described in section 9701(c)(2)(i) is a person that is a member of a controlled group of corporations which includes a signatory operator. The meaning of "controlled group of corporations" is taken from Section 52(a) of the Internal Revenue Code ("IRC") (26 U.S.C. § 52(a)). which in turn incorporates Section 1563(a) of the IRC (26 U.S.C. § 1563(a)). As provided in these sections, for two companies to be members of a controlled group of corporations, they must share commonality of ownership of more than 50 percent under one of several defined circumstances. Because there is not, and never has been, any commonality of ownership between [New Johnson] and [Old Johnson], the two companies are not members of a controlled group of corporations, and [New Johnson] does not fall within the first category of "related person" to [Old Johnson].

The second type of related person described in section 9701(c)(2)(ii) is a person that is a trade or business under common control with a signatory operator. The meaning of "common control" is taken from Section 52(b) of the IRC (26 U.S.C. § 52(b)), which incorporates regulations of the Secretary of the Treasury. These regulations, found at 26 CFR § 1.52–1, once again, require a commonality of ownership of more than 50 percent in order for two entities to be under common control. Therefore, [New Johnson] is not under common control with [Old Johnson], and [New Johnson] does not fall within the second category are related person to [Old Johnson].

The third type of related person described in Section 9701(c)(2)(iii) is a person that has a partnership or joint venture interest with a signatory operator, [New Johnson] and [Old Johnson] have never had a partnership or joint venture relationship. Therefore, [New Johnson] does not fall within the third category of "related person" to [Old Johnson].

Finally, the Coal Act provides for a fourth category of "related person" defined to be a "successor in interest" to any of the first three categories of related persons from Section 9701(c)(2)(i), (ii) or (iii). The term "successor in interest" is not defined, but whatever its meaning, it only applies to a successor in interest to a related person. Since there is no "related person" to [Old Johnson] within the first three categories, the quest for the fourth type of related person must fail—there can be no successor in interest to a nonexistent party. Specifically, [New Johnson] cannot fall within this fourth category of "related person" to [Old Johnson].

(Pl.'s Mot. for Summ. J. at 11–13).

The defendants do not contest that the plaintiff is not defined as a related person as the plaintiff interprets this provision. The defendants, however, argue that Section 9701(c)(2)(A) literally includes the plaintiff because one of the "persons" described in clauses (i), (ii) and (iii) is a "signatory operator," and as the plaintiff is a successor in interest to a signatory, it is therefore within the fourth category of related persons. (Commissioner's Mot. for Summ. J. at 18; Trustees' Opp. at 6.) Defendant explains,

> [T]he statute provides, "A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii)." Thus, one may reasonably name the persons described in those clauses as 1) signatory operators; 2) members of controlled groups of corporations; trades or businesses under common control; and 3) persons with a partnership interest or joint venture with a signatory operator in a business in the coal industry if they employed the eligible beneficiaries. The literal language of the definition of related persons, thus read, includes direct successors to signatory operators.

(Commissioner's Mot. for Summ. J. at 18)

The plaintiff's explanation of the plain meaning of Section 9701(c)(2)(A) is reasonable, and the defendants' interpretation simply is not. The defendants' tortured interpretation that clauses (i), (ii), and (iii) of Section 9701(c)(2)(A) include signatory operators within their description is entirely illogical given that clauses (i), (ii), and (iii) are defined as persons who "shall be considered to be a **related person to a signatory operator.**" 26 U.S.C.A. 9701(c)(2)(A) (emphasis added). A "related person to a signatory operator" cannot be the signatory operator itself. The statute defines a signatory operator as "a person which is or was a signatory to a coal wage agreement." 26 U.S.C.A. § 9701(c)(1) (West Supp.1997). A "signatory operator" has its own definition, which does not include a "related person to a signatory operator."

Aside from Section 9701(c)(2), there is little language in the statute regarding successor companies or the definition of related persons. The language that exists does not apply to the instant case, and therefore, there is no further "plain language" of the statute to consider in determining the liability of New Johnson. One section of the statute provides that:

> if a person becomes a successor of an assigned operator after the enactment date, the assigned operator may transfer the assignment of an eligible beneficiary ... to such successor, and such successor shall be treated as the assigned operator with respect to such eligible beneficiary for purposes of this chapter. Notwithstanding the preceding sentence, the assigned operator transferring such assignment (and any related person) shall remain the guarantor of the benefits provided to the eligible beneficiary under this chapter.

26 U.S.C.A. § 9706(b)(2) (West Supp.1997). This provision does not apply to the instant situation because there is no assigned operator to transfer his assignments to his successor. Old Johnson was not assigned as the operator because it was no longer in business, and therefore never had any liability that it could transfer to a successor.

Another section provides that "[a]ny related person with respect to an assigned operator shall be jointly and severally liable for any premium required to be paid by such operator." 26 U.S.C.A. § 9704(a) (West Supp.1997). This reference, however, does not expand the definition of "related persons" or their liability beyond that of 26 U.S.C.A. § 9701(c)(2)(A) (West Supp.1997).

A provision which applies to Individual Employer Plans and the 1992 UMWA Benefit Plan, but not to the Combined Fund, states that "the term 'last signatory operator' shall include a successor in interest of such operator."[1] 26 U.S.C.A. § 9711(g) (West Supp. 1997). No plain language of the statute, therefore, supports defendants' interpretation that a successor company to a signatory operator is liable.

The defendants cite two cases which, through dicta, support their interpretation of the liability of successor companies. In *LTV Steel Company v. Shalala*, 53 F.3d 478, 485 (2d Cir.1995), *cert. denied*, 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995), the court summarily states, without argument or authority, that "where the signatory operator is no longer in business, the liability for its beneficiaries passes to 'related persons,' such as successors in interest." This dicta, without authority or argument, is not persuasive.

In *Davon v. Shalala*, 75 F.3d 1114 (7th Cir.1996), the court held that the reach-back financing provision of the Coal Act was constitutional. One of the five plaintiffs in this case. Davon, is described as an asset purchaser of its predecessor company, which was liable to the Combined Fund as a signatory to the 1950 National Bituminous Coal Wage Agreement. *Id.* at 1120. Davon challenged the constitutionality of the Act as applied to it on the grounds that it purchased the assets of its predecessor company after that company had left the coal industry. But, the court stated.

> the aforementioned rationales apply with equal force to an asset purchaser. Through the asset purchase. Davon benefitted from the profits obtained by [its predecessor] with its employment of miners. Further, participation by as many signatory companies as possible was necessary both to ensure adequate funding and avert an economic crisis in the coal industry. Thus Congress could rationally have chosen to ignore changes in corporate form that would allow the company to avoid

responsibility for retired miners and the Coal Act's required contributions.

*Id.* at 1126. Therefore, the *Davon* court found that interpreting the Act to hold an asset purchaser equally liable as its predecessor company was constitutional, for similar reasons to those put forth by defendants in the instant case. It did not authoritatively state, much less hold, however, that successor companies, or even more specifically, asset purchasers, are liable as related companies under the statute. Because these cases provide only dicta relevant to the instant case, do not argue authoritatively that successor companies to a signatory operator are liable under the statute, and are from other circuits, they are not persuasive.

In addition to the plain meaning of the statute, a second principle of statutory construction provides further support for plaintiff's position. When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995) (quoting *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)). Thus, "when Congress includes a specific term in one section of the statute but omits it in another, it should not be implied where it is excluded." *Cramer v. Commissioner, Internal Revenue Service*, 64 F.3d 1406, 1412 (9th Cir.1995), *cert. denied*, 517 U.S. 1244, 116 S.Ct. 2499, 135 L.Ed.2d 190 (1996). "Where Congress knows how to say something but chooses not to, its silence is controlling." In *Re Haas*, 48 F.3d 1153, 1156 (11th Cir.1995). Applying this principle of statutory construction to the instant case, the exclusion of "a successor in interest to a signatory operator" from the definition of related persons should be treated as intentional, since the obligations of successors are addressed in other places in the statute.

---

1. The Individual Employer Plans and Benefit Plan were created under Subchapter C of the Coal Act and are completely separate from the Combined Fund created under Subchapter B.

They address a different class of beneficiaries and impose obligations on different responsible parties.

However, this "negative pregnant argument"—the statutory construction rule that an express statutory requirement here, contrasted with statutory silence there, shows an intent to confine the requirement to the specified instance—without more. "should not be elevated to the level of interpretive trump card." *Field*, 116 S.Ct. at 442. In *Field*, the Supreme Court stated that given several reasonable statutory interpretations, the negative pregnant argument should not be determinative, and found that the interpretation based on the negative pregnant argument was unreasonable. *Id.*

Congress did address successors in interest to a signatory operator and the liabilities of successors in other places in the statute. As discussed above, 26 U.S.C.A. § 9706(b)(2) provides that an assigned operator may transfer its liability to its successor, provided that it remains a guarantor of the benefit. This provision demonstrates, at the least, that Congress had knowledge of successorship relationships.

Section 9711(g)(1), which applies only to Individual Employer Plans and the 1992 UMWA Benefit Plan, and not to the Combined Fund, states that "the term 'last signatory operator' shall include a successor in interest of such operator." This provides even stronger evidence that Congress knew how to say that a successor company would have the same liability as the original signatory operator. Therefore, Congress' failure to state this in relation to the Combined Fund should be treated as intentional, although not necessarily determinative, if it results in an unreasonable interpretation and another reasonable interpretation exists, according to *Fields*.

In this case, the negative pregnant rule results in a reasonable interpretation, that the statute does not make a successor in interest to a signatory operator liable to pay into the Combined Fund, which the plain language clearly supports. The First Circuit, reviewing a successor issue, stated, "reviewing the language and architecture of the Coal Act as a whole—a permissible inquiry in carrying out the first step of a Chevron analysis ...—we think it is obvious that Congress purposely omitted any reference to

successors in writing section 9706(a)'s assignment scheme." *Eastern Enterprises*, 110 F.3d at 155. Therefore, this meaning of the statutory language should be conclusive, unless it is clearly at odds with the legislative intent. Additional canons of statutory interpretation must now be employed, therefore, to determine if this language is "demonstrably at odds with" the intent that Congress had when enacting the statute.

*Legislative History*

"While ordinarily we have no need to refer to legislative history at Chevron step one, 'reference to statutory design and pertinent legislative history may often shed new light on congressional intent, notwithstanding statutory language that appears superficially clear.' " *Halverson*, 129 F.3d at 187 n. 10 (quoting *Natural Resources Defense Council*, 57 F.3d at 1127).

The statute was created to rectify a financial crisis in the collectively bargained multi-employer health-care system of the coal industry. Legislative intervention was needed because mounting deficits in these plans threatened to curtail the flow of benefits. The Conference Report states that "the essence of the Conference Agreement is that those companies which employed the retirees in question, and thereby benefitted from their services, will be assigned responsibility for providing the health-care benefits promised in their various collective bargaining agreements." 138 Cong. Rec. S17603 (daily ed. Oct. 8, 1992). The statute created a new definition of responsible operator.

> which includes every entity related to the responsible operator which continues in business, whether or not the related company is in the coal mining industry. Broadening the definition of responsible operator in this matter is the essence of the Conference Agreement. It recognizes the financial interdependence of these related entities, and is consistent with the drafters' view that it is more appropriate to assign the cost of providing these benefits to ongoing business entities which have or had a relationship with the signatory employer, than to tax totally unrelated entities to fund the contractually promised benefits.

*Id.* "Thus, the Conference Agreement's overriding purpose is to find and designate a specific obligor for as many beneficiaries in the Plans as possible." *Id.* at S17604.

The defendants argue that the meaning of the "plain language"—holding liable a successor to a related person, but not a successor to a signatory operator—is illogical and undermines the purpose of the statute and Congress' intent, which was to assign as many beneficiaries as possible to specific signatory operators, and to broadly define related persons in order to accomplish this. The defendants assert that the plaintiff's interpretation of the statute would lead to the same financial crisis for the Coal Act health care system which necessitated the enactment of the Coal Act.

> If New Johnson were to prevail in this case, an assigned operator—particularly one that is closely held, like Old Johnson—could sell all of the assets of its business to a new entity which … could not possibly be assigned any Coal Act liability. The assigned operator could take the cash proceeds of the sale and distribute those proceeds to its shareholders and then terminate its own corporate existence. Through this scheme, New Johnson's position would permit the very same business to continue without Coal Act liability, while the owners of the assigned operator attempt to walk away with their money and leave the operator's assigned beneficiaries behind to have their health care financed by other employers.

(Trustees' Reply at 2.) Therefore, the defendants argue, assigning liability to a successor company is necessary in order to carry out the essential purpose of the statute.

The statute clearly intended, and does, hold related companies liable to pay healthcare benefits into the Combined Fund. While the Conference Report states that "because of complex corporate structures which are often found in the coal industry, the number of entities made jointly and severally liable for signatory operator's obligations under the definition of related person is intentionally very broad," the Report immediately follows this with a definition of "related person" that is no broader than that of the statute:

> related persons—meaning (1) those within the controlled group of corporations including the signatory operator, using a 50 percent common ownership test, (ii) a trade or business under common control with the signatory operator, (iii) one with a partnership interest or joint venture with the signatory operator, or (iv) *in specific instances successors to the collective bargaining agreement obligations of a signatory operator*—are equally obligated with the signatory operator to pay for continuing health care coverage.

138 Cong. Rec. S17604 (daily ed. Oct. 8, 1992) (emphasis added). This definition of related person is no broader or more specific than the definition in the statute. In fact, its definition of successors is circular. It says that related persons include successors to the obligations of the signatory operator, but the statute defines successors to those obligations as related persons.

The only evidence of specific legislative intent to hold liable successor companies to the signatory operator is a statement by Senator Rockefeller, the principal sponsor of the legislation, during debate over the Coal Act in 1992, that "the term 'signatory operator,' as defined in new section 9701(c)(1), includes a successor in interest of such operator." 138 Cong. Rec. S17634 (daily ed. Oct. 8, 1992). While statements made during debate by a Senator or Representative who is the sponsor of the legislation are neither controlling nor dispositive, they are "entitled to weight," and considered "an authoritative guide to the statute's construction." *Simpson v. United States,* 435 U.S. 6, 13, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *North Haven Board of Education v. Bell,* 456 U.S. 512, 526–527, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).

In *North Haven,* the statements of the sponsor of the statutory provisions were considered authoritative indications of congressional intent, in particular, because the amendments originated on the floor and therefore no committee report discussed the provisions, and the Senator's statements, some of which were prepared rather than spontaneous, were made on the same day the amendment was passed. *North Haven,* 456

U.S. at 527. In *Simpson,* the court also stated that the sponsor's remarks are entitled to weight especially because the Representative's explanation of the scope of his amendment was in complete accord with, and gave full play to the rationale of the amendment. *Simpson,* 435 U.S. at 13–14.

These cases accord with a later Supreme Court case, which states that statements by individual legislators should not be given controlling effect, but that they provide evidence of Congress' intent *when they are consistent with the statutory language and other legislative history. Brock v. Pierce County,* 476 U.S. 253, 263, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). Another Supreme Court case found that one isolated remark by the Senator who sponsored the statute, which was ambiguous in meaning when examined in context, was insufficient to establish legislative intent. *Weinberger v. Rossi,* 456 U.S. 25, 34–35, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982).

 In the instant case, given that Senator Rockefeller's statement is not consistent with the statutory language and other legislative history—in particular the Conference Report, which, "next to the statute itself, . . . is the most persuasive evidence of congressional intent"—this statement may not be considered as evidence of legislative intent or the correct scope of the statute. 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.08 (5th ed.1992). Even if Senator Rockefeller's statement were given some weight as to the legislative intent, it could not determine legislative intent so conclusively that it would overcome the plain meaning of the statute.

### IV. CONCLUSION

While Congress' intent to broadly define related persons and to find specific obligors for as many beneficiaries as possible is clear, this is not a sufficient reason to conclude that Congress intended that successor companies to a signatory operator should be held liable, when the plain meaning of the statute does not support this interpretation. The conclu-

2. The court observes that the United States District Court for the Western District of Pennsylvania issued an opinion in *Sager Coal Company v. Apfel,* C.A. No. 96–1107, on January 12, 1998,

sion of the court in *Ethyl Corp. v. EPA,* 51 F.3d 1053, 1062–63 (D.C.Cir.1995), that "[a]t best, the legislative history is cryptic, and this surely is not enough to overcome the plain meaning of the statute," applies to the instant case. Because the plain language of the statute clearly excludes plaintiff from liability for the health care premiums of the beneficiaries assigned to it by the SSA, therefore, summary judgment must be granted to the plaintiff.[2]

which addressed very similar issues, applied a similar analysis and reached the same conclusion as this court does.