**R.G. JOHNSON COMPANY, INC., Appellee,**

v.

**Kenneth S. APFEL, Commissioner of Social Security and Michael H. Holland, et al., Appellants.**

**Nos. 98–5109, 98–5127.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1999.

Decided April 9, 1999.

Peter Buscemi, with whom John R. Mooney, David W. Allen, and Carolyn O'Meara Dutrow were on the briefs, argued the cause for appellants UMWA Combined Benefit Fund and its Trustees.

Alexander D. Shoaibi, Assistant U.S. Attorney, with whom Wilma A. Lewis, United States Attorney, Mark E. Nagle, and R. Craig Lawrence, Assistant U.S. Attorneys, and Donna J. Fuchsluger, Counsel, Social Security Administration, were on the briefs, argued the cause for federal appellant.

Mary Lou Smith, with whom William H. Howe and Richard A. Steyer were on the brief, argued the cause for appellee R. G. Johnson Company, Inc.

Before WILLIAMS and RANDOLPH, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Circuit Judge BUCKLEY.

Dissenting opinion filed by Circuit Judge RANDOLPH.

BUCKLEY, Senior Circuit Judge:

The Coal Industry Retiree Health Benefit Act of 1992 directs the Commissioner of Social Security to assign financial responsibility for coal industry retirees covered by certain United Mine Workers of America collective bargaining agreements either to a "signatory operator" that formerly employed the retiree or to a "related person" to the signatory operator. Appellee R. G. Johnson Company, Inc. protests the assignment to it of the retired employees of a signatory operator whose assets and remaining business it had purchased seven years earlier. The district court granted the company's motion for summary judgment on the ground that the unambiguous language of the statutory definition of "related person" did not apply to successors or successors in interest to a signatory.

Although we cannot fault the district court's literal reading of the definition, we conclude that because such an interpretation would frustrate the clear intent of Congress in enacting the Coal Act, the

phrase "related person" must be construed to include a successor in interest to a signatory operator. We therefore set aside the grant of summary judgment in favor of R. G. Johnson Company, Inc. and remand the case to the district court.

## I. BACKGROUND

### A. The Coal Act

The factors that led to the passage of the Coal Industry Retiree Health Benefit Act of 1992, Pub.L. No. 102–486, 106 Stat. 3036 (codified at 26 U.S.C. §§ 9701–22 (1994)) ("Coal Act" or "Act"), are well documented in prior litigation. *See, e.g., Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 2137–42, 141 L.Ed.2d 451 (1998). We recount only those that are necessary to place the present litigation in context.

In 1974, the Bituminous Coal Operators' Association ("Association"), a multi-employer bargaining organization and the primary representative of coal mine operators in negotiations with the United Mine Workers of America ("UMWA"), entered into a collective bargaining agreement that created four trusts to provide pension and medical benefits to miners and their families. The coal operators, who as members of the Association were signatories to the agreement, undertook to fund the trusts through the payment of annual assessments that were based on the amount of coal they produced and on the number of hours their miners worked. One of the trusts, the 1950 UMWA Benefit Plan ("1950 Benefit Plan"), provided health benefits to miners who retired before 1976 while another, the 1974 UMWA Benefit Plan ("1974 Benefit Plan"), covered the health benefits of active miners and those who retired in 1976 or thereafter.

In 1978, the Association and the union executed a new agreement that restructured the 1974 Benefit Plan to make signatory operators primarily responsible for the health care of their own active employees and those who retired during or after 1976. Thus, while the 1950 Benefit Plan continued to cover all pre–1976 retirees, the 1974 Benefit Plan, as restructured, remained in effect only to cover employees who had retired after 1975 and whose last employer was no longer in business. The Association of Bituminous Contractors, Inc., which represented contractors to the coal mining industry, entered into similar agreements with the UMWA. These entitled its member companies' retired employees to participate in the 1950 and 1974 Benefit Plans established for retired miners.

In the 1980's, the benefit plans began to suffer increasing financial difficulties because of the growing number of signatories to the 1978 agreement that had subsequently either gone out of business or otherwise ceased to meet their continuing obligations under the agreement. As a result, the remaining signatories were forced to absorb the increasing cost of providing medical benefits for the retirees of the operators who no longer contributed to the plans.

In 1992, in response to the problems created by the plans' growing deficits, Congress passed the Coal Act in order "to provide for the continuation of a privately financed self-sufficient program for the delivery of health care benefits to the beneficiaries of [multi-employer benefit] plans." Coal Act, Pub.L. No. 102–486, § 19142(b)(3), 106 Stat. 3037 (1992) (codified as note following 26 U.S.C. § 9701 (1994)). To that end, Congress found it necessary "to identify persons most responsible for plan liabilities in order to stabilize plan funding and allow for the provision of health care benefits to such retirees." *Id.* § 19142(a)(2).

The Coal Act merged the 1950 and 1974 Benefit Plans into a new multi-employer plan called the UMWA Combined Benefit Fund ("Fund"). 26 U.S.C. § 9702(a)(2). The Fund provides retirees and their dependents with "substantially the same" health benefits that they were entitled to

receive under the 1950 and 1974 Plans. *Id.* § 9703(b)(1), (f).

Section 9706 of the Act requires the Commissioner of Social Security ("Commissioner") to assign each eligible beneficiary of the Fund to a "signatory operator which (or any related person with respect to which) remains in business," such assignments to be made in accordance with the instructions contained in that section. *Id.* § 9706. Such operator or person must then pay an annual premium to the Fund based on the number of beneficiaries for which it is responsible. *Id.* § 9704. Beneficiaries for whom the Commissioner is unable to locate an appropriate assignee become the collective responsibility of all companies to which beneficiaries have been assigned. *Id.* § 9704(a)(3) ("unassigned beneficiaries premium").

## B. Factual Background

In 1988, a group of investors organized appellee R. G. Johnson Company, Inc. ("New Johnson") for the purpose of acquiring the operating assets, certain real estate, and the right to use a virtually identical corporate name from The R. G. Johnson Company ("Old Johnson"). New Johnson employed, without interruption, much of Old Johnson's work force; rented space in the same building previously occupied by Old Johnson; and assumed the older company's only remaining contract. Following the sale to New Johnson, Old Johnson continued to exist essentially as a personal holding company for its owners. New Johnson, for its part, performed the same kind of coal mine shaft and slope construction work that Old Johnson had been engaged in since 1917.

In 1995, the Commissioner notified New Johnson, in a series of letters, of the assignment to it of a number of beneficiaries who had been former employees of Old Johnson. Each of the letters contained the following statement:

> Our records and UMWA records indicate that you are related to [Old Johnson] who is no longer in business. This

operator would have been responsible under the law for the miner named below under the rules for how we assigned responsibility.... Therefore, *as a related company* you must assume responsibility.

*See, e.g.,* List of Assigned Miners and Other Beneficiaries, *reprinted in* Joint Appendix 729 (emphasis added). New Johnson requested review of these assignments based on its claim that it was not related to Old Johnson. The Commissioner conducted the review and upheld the assignments, explaining that "[u]nder current SSA policy, successors are considered another type of related person and are treated as a related person for purposes of making assignments under the Coal Act." Thereafter, the Fund notified New Johnson of its premium obligations in annual assessment letters. The company paid the premiums under protest and commenced this lawsuit seeking a declaration that it is not liable for beneficiaries under the Coal Act.

New Johnson's complaint contains five counts, each of which presents a distinct legal argument. The company moved for summary judgment based on the first two of these counts; namely, that it was not a related person to Old Johnson as defined in the Coal Act, and that the Act did not provide for the assignment of beneficiaries to a successor or successor in interest to a signatory operator. The Commissioner filed a cross-motion for summary judgment. After considering the two motions, the district court granted summary judgment in favor of New Johnson. It concluded that the plain language of the provisions of the Act defining "related person" did not include a successor to a signatory operator and that the legislative history cited by the defendants "could not determine legislative intent so conclusively that it would overcome the plain meaning of the statute."*R. G. Johnson Co. v. Apfel,* 994 F.Supp. 10, 14, 18 (D.D.C.1998).

## II. Discussion

As noted above, the Coal Act directs the Commissioner to assign a Fund beneficiary to a signatory operator or "any related person." 26 U.S.C. § 9706(a). The Act defines related person as follows:

(A) In general

A person shall be considered to be a related person to a signatory operator if that person is—

(i) a member of the controlled group of corporations (within the meaning section 52(a) [of the Internal Revenue Code]) which includes such signatory operator;

(ii) a trade or business which is under common control (as determined under section 52(b) [of the Internal Revenue Code]) with such signatory operator; or

(iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.

A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).

*Id.* § 9701(c)(2)(A). The statute thus creates four categories of related persons: those described in clauses (i), (ii), and (iii), and those who are "successors in interest" to any person described in those clauses. ▉ On appeal, the parties pose two questions: Does the Coal Act impose liability for a Fund beneficiary on a successor in interest of a signatory operator; and if it does, is New Johnson a successor in interest of the kind contemplated by the statutory definition of "related person"? As always, when asked to rule on an agency's interpretation of a statute it is charged with administering, we undertake the two-step *Chevron* analysis. *See Chevron U.S.A. Inc. v. NRDC, Inc., et al.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In the first instance, we must determine whether the intent of Congress is clear. If it is, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If, however, we find that the statute is silent or ambiguous with respect to the matter at issue, the court must defer to the agency's construction of the statute if it is "permissible." *Id.* at 843, 104 S.Ct. 2778.

In support of its contention that the definition of related person applies to a signatory operator's successor in interest, the Commissioner argues that a signatory operator is a "person described" in clauses (i), (ii), and (iii) because the words "signatory operator" appear in each of them. With all respect, we find that explanation difficult to follow. Because the persons *described* in those clauses are described in terms of their relationship to the signatory operator, it would seem evident that they cannot include the signatory itself. To suggest otherwise is tantamount to saying "I am related to me." The Commissioner also points to the words "In general" at the beginning of the definition of related person as permitting it to view the statutory language as less than exhaustive. But even if we were to accept the argument that the catalog of related persons in clauses (i), (ii), and (iii) is not exclusive, the Commissioner cannot overcome the fact that in order to be deemed a related person, a successor in interest must be one to a person described in those clauses. Under the circumstances, we are unable to quarrel with the district court's conclusion that the agency's construction of the related person definition is "tortured." *R. G. Johnson Co.,* 994 F.Supp. at 14. We agree with the Commissioner, however, that Congress could not have intended this result; and we say this without any reliance on the inconclusive legislative history cited by the Commissioner.

Congress declared that one of its purposes in enacting the Coal Act was "to identify persons most responsible for plan liabilities in order to stabilize plan funding and allow for the provision of health care benefits to such retirees." Pub.L. No. 102–486, § 19142(a)(2), 106 Stat. 3037 (codified at note following 26 U.S.C. § 9701 (1994)). In light of this objective and the broad reach of the provisions imposing liability on related persons, we can think of no reason why Congress would have intended to impose liability for the beneficiaries on, for example, a successor in interest to a Coca–Cola bottling company under common control with a signatory coal mine operator while exempting a coal-mining successor in interest to that operator. When we asked counsel for New Johnson if she could provide any plausible reason why Congress should have intended such an exemption, the only explanation she was able to suggest was that coal mining operators had more effective lobbyists in Washington than did their non-mining affiliates. We find this explanation less than compelling. Nor are we impressed by our dissenting colleague's suggestion (see dis. op. at 896) that Congress could have intended to benefit coal miners by eliminating the impediment to the sale of a coal company posed by the potential liabilities created by the Coal Act. The problem with this explanation is that it assumes that Congress was not equally concerned for the jobs of employees of persons related to a signatory operator, who would face the same difficulties in disposing of a business. But if Congress was in fact solely concerned with the protection of miners from that contingency, it would have also exempted from liability successors in interest to any related person who was engaged in the mining of coal.

We are faced, then, with one of those "rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks and brackets omitted). In such a circumstance, "the intention of the drafters, rather than the strict language, controls." *Id.* Accordingly, in order to "give effect" to Congress's intent in this case, *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778, we hold that section 9701(c)(2)(A) must be construed to permit the assignment of a Fund beneficiary to the successor in interest of a signatory operator. *See Citibank v. Emery (In re Emery),* 132 F.3d 892, 896 (2d Cir.1998) (because "the literal application of § 727(d) here [could not] have been intended by Congress," court held that the section did not preclude a particular suit).

Although we hold that the term "related person" does encompass a successor in interest to a signatory operator, we do not address New Johnson's alternative argument that it is not a successor in interest to Old Johnson within the meaning of the Act because that question was not before the district court. It is our normal practice to "refuse[ ] to hear any claim upon which the district court has not had an opportunity to rule." *Boehner v. Anderson,* 30 F.3d 156, 162 (D.C.Cir.1994). *See also Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below."). We have no reason to depart from that practice in this case. New Johnson may, however, present this argument to the district court on remand. *See Peralta v. U.S. Attorney's Office,* 136 F.3d 169, 173 (D.C.Cir.1998) (on remand, party free to reassert argument raised for first time on appeal).

### III. Conclusion

In light of the foregoing, we set aside the district court's grant of summary judgment in favor of New Johnson and remand the case so that the court may consider New Johnson's argument that it is not a successor in interest to Old Johnson as well as the others set forth in the counts of the complaint that were not placed before

the court in New Johnson's motion for summary judgment.

*So ordered.*

RANDOLPH, Circuit Judge, dissenting:

The definition of "related persons" in the Coal Industry Retiree Health Benefit Act excludes successors in interest to signatory operators, and thereby exempts them from liability for the signatory operator's Fund beneficiaries. *See* 26 U.S.C. §§ 9701(c)(2)(A), 9706(a). My colleagues recognize as much. But they believe exempting successors in interest such as appellee would frustrate Congress's "clear intent." And so they treat the words "related persons" as if they covered successors although they do not. Given the nature of the judicial process, this mode of judicial analysis embodies some severe theoretical difficulties. My problem with the majority decision is more practical. In detecting the "real" intent of Congress, my colleagues first eye the Act's general purpose "to identify [those] persons most responsible for plan liabilities." Maj. op. at 894–95. With this firmly in mind, they find it implausible for Congress "to impose liability for the beneficiaries on, for example, a successor in interest to a Coca–Cola bottling company under common control with a signatory coal mine operator while exempting a coal-mining successor in interest to that operator." *Id.* I find this not in the least bit implausible. Exempting successors in interest to signatory operators from liability for the signatory operator's Fund beneficiaries benefits miners because it facilitates the sale of coal companies. Without the exemption, prospective purchasers can never be sure of their risks. Their liability would depend on whether, sometime in the future, the seller—that is, the signatory operator—ceases to "remain[ ] in business," a matter wholly outside their control. *See* 26 U.S.C. § 9706(a). (A person is in "business" within the meaning of the statute "if such person conducts or derives revenue from any business activity, whether or not in the coal industry." *See* 26 U.S.C. § 9701(c)(7).) My colleagues say, in response, that Congress could have gone further and exempted successors in interest to related coal mining companies from liability, thus facilitating the sale of these companies as well. Perhaps so, but Congress rarely has to go as far as its logic would take it. The point remains that construing the statute as it was written does not render it inscrutable.

One further observation is in order. The quandary my colleagues confront here is of the Social Security Commissioner's own making. The problem stems from the Commissioner's version of what constitutes "business activity." *See id.* Borrowing from an inapposite IRS regulation, the Commissioner determined that the signatory operator—"Old Johnson"—no longer engaged in "business activity" after the sale because it now derived its income from securities and real estate. *See* 26 C.F.R. § 1.355–3(b)(2)(iv). Old Johnson was, according to the Commissioner, therefore out of business. Even though Old Johnson still existed, having merely exchanged its physical assets for cash, the Commissioner no longer held it financially responsible for its Fund beneficiaries. *See* 26 U.S.C. §§ 9706(a), 9701(c)(7). The Commissioner was thus left groping for a "related person" to whom Old Johnson's liabilities could be assigned. *See* 26 U.S.C. § 9701(c)(2)(A). Had the Commissioner adopted a definition of "business activity" which permitted assignment to signatory operators still in existence and earning income, the entire problem would have disappeared and I presume my colleagues would have read the Act as it was written.