**INDEPENDENT INSURANCE AGENTS OF AMERICA, INC., National Association of Professional Insurance Agents, Inc., National Association of Life Underwriters, National Association of Mutual Insurance Companies, Crop Insurance Research Bureau, Plaintiffs,**

v.

**John D. HAWKE, Jr., in his capacity as Comptroller of the Currency, and The Office of the Comptroller of the Currency, an agency of the United States, Defendants.**

Civil Action No. 98–cv–0562.

United States District Court, District of Columbia.

March 24, 1999.

Ann M. Kappler, Jenner & Block Washington, DC, for plaintiffs.

F. Thomas Eck, IV, Office of the Comptroller of the Currency Washington, DC, for defendants.

### MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are two dispositive motions: Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs' corresponding Motion for Summary Judgment pursuant to Rule 56. For the reasons that follow, the Plaintiffs' motion is granted and the Defendants' motion is denied.

### BACKGROUND

This case was brought following the issuance of an interpretive letter by the Office of the Comptroller of the Currency ("OCC") (Letter of Julie L. Williams, 12/24/97 ("OCC Letter")). The OCC Letter purported to resolve a question regarding whether, under the National Bank Act ("NBA"), 12 U.S.C. §§ 1 *et seq.*, National

Banks are permitted to sell "crop insurance" to farmers in connection with farming loans (without regard to the population size of the locale). The Comptroller, finding that the sale of such insurance was part of, or incidental to, the business of banking, concluded that it was within the range of permissible banking activities covered under 12 U.S.C. § 24 (Seventh). *Id.* Taking exception with this ruling, the Plaintiffs filed suit here and these motions followed.

### DISCUSSION

As an initial matter, the Court notes that the two motions cover the exact legal issues, yet are brought pursuant to two different Federal Rules of Civil Procedure: Rules 12(b)(6) (Def.—Motion to Dismiss on the Pleadings) and 56 (Pl.—Motion for Summary Judgment). Insofar as the parties rely on documentation outside of the Pleadings (and the same result would be reached under either analysis), the Court finds that the issues are more appropriately analyzed under the Rule 56 standard.

### *Summary Judgment Standard*

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, the essential facts are not in dispute and the Court therefore focuses its analysis on the correct interpretation of the relevant statutes and applicable legal principles.

The parties seek a ruling from this Court regarding whether 12 U.S.C. § 24 (Seventh) of the NBA may be interpreted to permit national banks to sell "crop insurance" to farmers, or whether such activity is impliedly prohibited by other sections of the NBA. Essentially, this is an appeal of the Comptroller's interpretation

that section 24 allows national banks to engage in such activity.

### The "Chevron" Analysis

 It is well settled that an interpretive ruling by an agency, charged with enforcing a law, is to be given controlling weight if it is reasonable and not "arbitrary, capricious or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Such deference is secondary, however, to the threshold query of whether Congress has spoken directly to the issue. If " 'the intent of Congress is clear, [t]hat is the end of the matter.' " *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778). The deferential portion of the analysis is triggered only when the statute is "silent or ambiguous with respect to the specific issue." *Chevron* at 843, 104 S.Ct. 2778. It is under this framework that the Court undertakes to reconcile the issues at bar.

### The National Banking Act

At issue are two potentially conflicting statutes: 12 U.S.C. § 24 (Seventh) and 12 U.S.C. § 92. The Plaintiffs argue that the statutes are not ambiguous and the Comptroller's decision, therefore, is not entitled to deference. The Court agrees.

Title 12 U.S.C. § 24 (Seventh) of the National Bank Act of 1864 states in relevant part:

> [national banks shall have the power] to exercise ... **all such incidental powers** as shall be necessary to carry on *the business of banking;* by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes ...

Although the sale of insurance is not listed in this section, the Supreme Court has expressly held that the "business of banking" is not limited to those powers enumerated in section 24 (Seventh) and the Comptroller has discretion to authorize such additional activities as are reasonable. *NationsBank v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 258, n. 2, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (*"VALIC"*).

Notwithstanding, the Plaintiffs point to section 92 of the National Bank Act, which addresses specifically insurance activities by national banks. That section (enacted in 1916) provides:

> In addition to the powers now vested by law in national banking associations organized under the laws of the United States, any such association located and doing business in any place *the population of which does not exceed five thousand inhabitants ... may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company* authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company;
> . . . .

12 U.S.C. § 92.

 The Plaintiffs argue that section 92, by its very terms, impliedly prohibits the sale of insurance by banks in places with a population that exceeds 5,000 inhabitants. They cite general principles of statutory construction as well as the doctrine *expressio unius est exclusio alterius* in support.[1]

 Applied here, the *expressio unius* doctrine raises the following question: if Congress had intended for 12 U.S.C. 24 (Seventh) to permit insurance sales by national banks generally as incident to bank-

---

1. That doctrine translates to: "the mention of one thing implies the exclusion of another thing." *Ethyl Corp. v. E.P.A.,* 51 F.3d 1053, 1061 (D.C.Cir.1995).

ing, why would it have expressly authorized such activity elsewhere in the NBA under very strict conditions (population cap). The logical answer, of course, is that Congress sought only to allow national banks to sell insurance in those smaller locales. Even without regard to the *expressio unius* principle, basic statutory construction requires that statutes be read to give each provision meaning. *See Markham v. Cabell,* 326 U.S. 404, 411, 66 S.Ct. 193, 90 L.Ed. 165 (1945) ("[T]he normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole ... [and each should be given] as full a play as possible.") What meaning could be attributed to section 92, if banks merely could point to section 24 (Seventh) and its incidental activity provisions for authorization to sell insurance generally?

Both the Second and Fifth Circuits have ruled that section 92 impliedly prohibits the sale of insurance by national banks in areas with populations greater than 5,000, regardless of the incidental banking provisions of section 24 (Seventh). *Saxon v. Georgia Assoc. of Ind. Ins. Agents Inc.,* 399 F.2d 1010 (5th Cir.1968) (prohibiting the sale of such broad forms of insurance as automobile, home, casualty and liability); *American Land Title Ass'n v. Clarke,* 968 F.2d 150 (2nd Cir.1992) ("*ALTA*") (prohibiting the sale of title insurance). In particular, the Court finds guidance from the exhaustive analysis by the Second Circuit in *ALTA.* There, the court not only followed the *expressio unius* maxim, but as further support for its decision, determined that congressional intent (from the legislative history of section 92) required such a course. Relying on two documents

(one a 1916 letter from then Comptroller John Skelton Williams to the Senate Banking Committee), the court concluded that "when Congress enacted section 92, it did so in the belief that under existing banking law (specifically 12 U.S.C. § 24 (Seventh)) national banks had no authority to engage in insurance agency activities." *ALTA* at 156. This conclusion obviated the need for further analysis under *Chevron.*

The Court agrees with the approach and the conclusions of the Second Circuit.[2] The legislative history, such as it is, suggests that section 92's enactment was intended to remedy what Congress saw to be the limited powers of section 24 (Seventh). Moreover, if Congress wanted to make the sale of insurance by national banks universal, it had the opportunity to do so when it enacted section 92. It did not, choosing instead to cap such expanded privileges to places with inhabitants of 5,000 or under. If Congress had believed that national banks could already sell insurance pursuant to the incidental banking powers of section 24 (Seventh), the enactment of section 92 would have been "superfluous." *ALTA* at 155.

Both the history of section 92, as well as basic statutory interpretation, show that neither section 24 (Seventh) nor section 92 is ambiguous. As a result, deference need not be given to the Comptroller's decision and any further analysis under *Chevron* is unnecessary. Accordingly, the Court concludes that the Comptroller cannot authorize the sale of insurance generally under the incidental banking provisions of section 24 (Seventh) without regard to the population cap of section 92.

---

**2.** Although the Defendants point to the decision in *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) ("*VALIC* "), that case is not on point. In *VALIC,* the Supreme Court deferred to the Comptroller's definition of "insurance" and ruled that national banks could sell "variable annuities" as investments. That decision (as well as others relied upon by the Defendants) expressly concluded that the proposed activity was not "insurance" and therefore not prohibited. *Id.* at 264, 115 S.Ct. 810; *see also American Ins. Ass'n v. Clarke,* 865 F.2d 278, 283 (D.C.Cir.1988) ("AMBAC") (finding that municipal bond insurance was actually "standby credit" and therefore permissible.)

## Judicial Exceptions to the NBA

Despite the holdings of the Fifth and Second Circuits, the Defendants point to the D.C. Circuit and its holding in *Independent Bankers Assoc. of America v. Heimann*, 613 F.2d 1164 (D.C.Cir.1979) to show that the sale of insurance may be authorized by the Comptroller.[3] That ruling, however, appears limited to a certain type of insurance known as "credit life" and does not purport to stand for the notion that section 24 (Seventh) can be used to authorize the sale of all insurance by national banks everywhere. As the Court of Appeals stated:

> Unlike other forms of insurance coverage, however, credit life insurance is a limited special type of coverage written to protect loans. In no way does it involve the operations of a general life insurance business whether written in a town of over or under 5,000 inhabitants.

*Id.* at 437, 613 F.2d 1164.

Insofar as holdings of the D.C. Circuit represent binding authority on this Court, the question then becomes whether the "credit life" exception in *Heimann* applies to these facts. Further analysis of this exception, therefore, is necessary.

In *Heimann*, the Court of Appeals defined "credit life insurance" as insurance that "encompasses health, accident or life insurance coverage issued as protection for a loan." *Id.* 613 F.2d at 1168, n. 9; (citing 12 C.F.R. § 2.3(e) (1979)). It is a "security device to protect the extension of consumer credit by banks." *Heimann* at 1168.

The Defendants describe "crop insurance" as "credit-related" insurance (comparable to the type permitted in *Heimann* ). Mtn. to Dis. at 9. In support, they state that the contemplated crop insurance would only be offered to farm borrowers of the national bank and would facilitate the bank's business by helping to mitigate agricultural lending risks. *Id.* They argue that offering such insurance is a logical outgrowth of the banking relationship because the lender already has a relationship with the borrower and, with the insurance, is better able to gauge the borrower's ability to repay the loan. *Id.*

These are all sound reasons for why national banks and their customers would benefit from the additional service of selling "crop insurance." Even so, the Court cannot find that crop insurance, as described by Defendants, is analogous to the type of credit-related insurance the *Heimann* court excepted.

As Plaintiffs point out, "credit-related" insurance has certain characteristics that are consistent with its purpose as a security credit device. *See* Pl.Sum.J.Mtn. at 20–21. They argue not only that such insurance must be issued in connection with a loan, but that it should be so closely connected that the coverage should not exceed the amount of the loan, and it should have the same origination and termination dates. *Id.* (citing Gary Fagg, *Credit Life and Disability Ins.* (CLICO Management 1986)). Most important, they state that the lender must be the beneficiary of any such credit-related insurance policy.[4] *Id.* All of these characteristics appear reasonable to the Court in light of the overall purpose of credit-related insurance, which primarily is to safeguard the lender rather than the borrower. Here, the proposed crop insurance (with the farmer as the beneficiary) would protect the farmer, not necessarily the lender, in the event some disaster destroyed or damaged the farmer's insured crop. With credit life insurance, the bank is the beneficiary and

---

3. In *Heimann*, the D.C. Circuit upheld a regulation of the Comptroller (as opposed to an interpretive ruling here) that prohibited national bank "insiders" from benefitting personally from the sale of credit life insurance. *Id.*

4. With the exception that the proposed crop insurance would be issued in connection with the loan, the Defendants do not allege that it shares any of the other characteristics of credit-related insurance listed here.

**26**

thereby is guaranteed repayment if the borrower defaults under one of the coverage conditions of the policy. This then is the critical difference between the type of insurance permitted in *Heimann* and the type proposed here. As a result, the Court cannot conclude that crop insurance is so similar to credit life insurance that it fits within the limited exception stated by the court in *Heimann*. If the Court of Appeals wishes to extend the exception to "crop insurance," it may of course do so. It is not, however, within this Court's purview to so presume.

## CONCLUSION

For the reasons stated, the Court concludes that the application of sections 24 (Seventh) and 92 of the NBA are not ambiguous and, as interpreted, preclude the Comptroller from authorizing the sale of crop insurance in locations without regard to population limits. Moreover, there is no applicable judicial exception that would permit the sale of such insurance. The Defendants' motion to dismiss, therefore, is denied and the Plaintiffs' motion for summary judgment is granted. An appropriate Order accompanies this Memorandum.

### *ORDER*

Upon consideration of the Plaintiffs' Motion for Summary Judgment, the Defendants' Motion to Dismiss, the oppositions and replies thereto and for the reasons stated in the accompanying Memorandum of law, it is by the Court this 23rd day of March 1999,

**ORDERED** that the Plaintiffs' Motion for Summary Judgment is **GRANTED**; it is further

**ORDERED** that the Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED**; and it is further

**ORDERED** that the Clerk end copies of this Memorandum and Order.